167 P.3d 1277

Richard B. NOLAN and Patricia
E. Nolan, husband and wife,
Plaintiffs/Appellants,

v.

STARLIGHT PINES HOMEOWNERS
ASSOCIATION, an Arizona non-profit
corporation, Defendant/Appellee.

No. 1 CA–CV 06–0572.

Court of Appeals of Arizona,
Division 1, Department D.

Oct. 9, 2007.

Jackson White PC, By James L. Tanner, Clint G. Goodman, Mesa, Attorneys for Plaintiffs/Appellants.

Israel & Gerity PLLC, By Kyle A. Israel, Scott A. Alles, Phoenix, Attorneys for Defendant/Appellee.

JOHNSEN, Judge.

¶ 1 Plaintiffs–Appellants Richard B. and Patricia E. Nolan appeal the trial court's entry of summary judgment in favor of Defendant–Appellee Starlight Pines Homeowners Association ("Starlight") on the Nolans' claims that by failing to make certain common areas of the Starlight Pines development accessible to Richard in his wheelchair, Starlight engaged in discrimination, breached its contract with the Nolans and created a nuisance that damaged the Nolans' property value. For the following reasons, we affirm.

## BACKGROUND

¶ 2 The Nolans own two lots in the Starlight Pines subdivision located in Happy Jack: Lot 469, on which they built a home, and Lot 596, which is separated from Lot 469 by a greenbelt area.[1] The Nolans' property and the greenbelt both border the Coconino National Forest; a fence separates that property from the forest land.

¶ 3 The Nolans alleged that Starlight discriminated against Richard, who is wheelchair-bound, on the basis of his disability. They alleged that Starlight's installation of gates along the fences bordering the greenbelt areas did not allow Richard access because (1) the gate latches required the user to grasp and pull the handle up at least two inches, (2) large boulders were placed along the greenbelt paths that intersected with

---

1. We refer to Lots 469 and 596 collectively as the "Nolans' property."

public roads, and (3) the surface area surrounding the gates was uneven in grade. In addition, the Nolans complained that (1) Starlight held its community meetings in a building with limited and unsuitable parking for the disabled, and that the building could only be accessed by negotiation of at least one step, (2) Starlight's communal trash collection area had an inaccessible entry and Richard could not reach the trash receptacles, and (3) Starlight's communal mailbox and bulletin board area required Richard to negotiate uneven surfaces and did not provide sufficient room to allow Richard to turn his wheelchair. The Nolans alleged that Starlight had refused to make appropriate accommodations that would allow Richard to access the greenbelts, the community center, the communal trash collection area, and the mailbox and bulletin board area (collectively, the "Common Areas").

¶ 4 The Nolans charged that Starlight had committed discriminatory housing practices in violation of the Arizona Fair Housing Act (the "FHA"), Arizona Revised Statutes ("A.R.S.") sections 41–1491 to –1491.37 (2004), by refusing to make reasonable accommodations in its rules, policies, practices or services in order to afford Richard an equal opportunity to use and enjoy the Nolans' property. The Nolans further alleged that Starlight violated the Arizonans with Disabilities Act (the "ADA"), A.R.S. §§ 41–1492 to –1492.11 (2004), and discriminated against Richard on the basis of his disability by denying him the opportunity to participate in or benefit from Starlight's goods, services, facilities, advantages, privileges and accommodations.

¶ 5 In addition, the Nolans alleged that the Declaration of Covenants, Conditions and Restrictions ("CC & Rs") recorded on the Nolans' property constituted a contract between Starlight and the Nolans and claimed that Starlight breached Article IX, Section 9.1 of the CC & Rs, which granted the Nolans the "right and easement of enjoyment" of their property, by discriminating against Richard on the basis of his disability. The Nolans also asserted that Starlight breached the implied covenant of good faith and fair dealing. Finally, the Nolans alleged

that Starlight created a nuisance by installing a gate in the fence along the greenbelt bordering the Nolans' property, which they alleged dramatically increased the noise and traffic along the greenbelt, and by discriminating against Richard on the basis of his disability.

¶ 6 Starlight moved for summary judgment. After briefing, the trial court held the ADA did not apply to Starlight and dismissed the Nolans' claim for discrimination in public accommodations and services. It further ruled that Starlight was not contractually obligated by the CC & Rs to accommodate Richard's disability and had not interfered with or breached the Nolans' right and easement of enjoyment of their property. The court therefore dismissed the Nolans' claims for breach of contract and breach of the implied covenant of good faith and fair dealing. In addition, the court found that the Nolans had not presented sufficient facts to support a claim for nuisance because they had not alleged any damage to their property and because, as a matter of law, the gates did not constitute a nuisance. The court ruled, however, that the FHA applied to Starlight's maintenance of the Common Areas because these areas were "services" provided by Starlight without which the Nolans could not make full use of their property. The court therefore denied Starlight's motion for summary judgment on the Nolans' FHA claim.

¶ 7 After additional discovery, Starlight again moved for summary judgment on the Nolans' FHA claim. The trial court found that because the Nolans conceded on summary judgment they had not requested any reasonable accommodations as required by the FHA, Starlight was entitled to judgment on this claim.

¶ 8 Thereafter, the trial court denied the Nolans' motion for new trial and awarded Starlight a portion of its attorney's fees pursuant to A.R.S. § 12–341.01 (2003). The Nolans timely appealed. We have jurisdiction pursuant to A.R.S. § 12–2101(B) (2003).

## DISCUSSION

### A. General Principles.

¶ 9 A court may grant summary judgment when "there is no genuine issue as to any

material fact and ... the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(c). Summary judgment should be granted "if the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." *Orme Sch. v. Reeves,* 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990). If the evidence would allow "a jury to resolve a material issue in favor of either party, summary judgment is improper." *United Bank of Ariz. v. Allyn,* 167 Ariz. 191, 195, 805 P.2d 1012, 1016 (App.1990).

¶ 10 In reviewing the trial court's grant of summary judgment, "we view the evidence in the light most favorable to the [Nolans,] and determine *de novo* whether there are any genuine issues of material fact and whether the trial court erred in its application of the law." *Unique Equip. Co. v. TRW Vehicle Safety Sys., Inc.,* 197 Ariz. 50, 52, ¶ 5, 3 P.3d 970, 972 (App.1999).

## B. The ADA Does Not Apply to the Common Areas.

¶ 11 Arizona law prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any place of public accommodation." A.R.S. § 41–1492.02(A). For purposes of the statute, a public accommodation is defined to include, among other things, places of lodging, restaurants and bars, theaters, stadiums, concert and lecture halls, auditoriums, convention centers, museums, libraries, public transportation stations, retail establishments, service establishments, social service estab-

lishments, places of recreation and schools. A.R.S. § 41–1492(9)(a)–(*l*) (2004).

¶ 12 The Nolans contend the Common Areas constitute public accommodations because they are places of "public gathering" and/or "recreation." A.R.S. § 41–1492(9)(d), -(i). They first argue that because the subdivision is not gated, the mailbox and bulletin board area, trash collection area and the greenbelts are, in fact, open for public use and claim that they presented evidence that Starlight invited the public to use the community center. Starlight argues that the Common Areas are not places of public accommodation because they are not open to the public, but rather are reserved for the use of Starlight Pines homeowners and their guests.[2]

¶ 13 Signs posted throughout the Starlight Pines subdivision identify it as private property belonging to Starlight Pines. The absence of a gate that would prevent public access to the Common Areas, without more, does not indicate that the general public is invited to use them for purposes of the statute. As the Nolans offered no evidence that these areas are open to the public, the trial court properly ruled that the ADA does not apply to the mailbox and bulletin board and trash collection area and the greenbelts.

¶ 14 We turn next to the Nolans' argument that because Starlight held its community center open to the public, it is a public accommodation that must comply with the requirements of the ADA. In opposition to Starlight's motion for summary judgment, the Nolans submitted portions of Starlight's monthly Board Meeting minutes, which they alleged demonstrated that the community center had been the site of county meetings, various community functions and public notary services.[3] The documents cited by the

2. Federal courts applying similar provisions of the Americans with Disabilities Act, for example 42 U.S.C. § 12181, have held that a public accommodation may exist within a facility that is not otherwise open to the public. *See, e.g., Jankey v. Twentieth Century Fox Film Corp.,* 14 F.Supp.2d 1174, 1179 (C.D.Cal.1998). Accordingly, if the Common Areas constitute public accommodations, they may be subject to the ADA, even though the remainder of the subdivision is private property not subject to the ADA.

3. Richard also submitted an affidavit in which he averred that the community center had been used to provide notary services to the public, hold fundraising auctions, hold county meetings and for various community functions. However, because Richard did not state in his affidavit that he has personal knowledge of the facts contained therein, we will not consider it. *See Portonova v. Wilkinson,* 128 Ariz. 501, 502, 627 P.2d 232, 233 (1981) (affidavits supporting opposition to summary judgment must be based on the affiant's personal knowledge).

Nolans do not demonstrate that the community center was held open for public events. The minutes evidence that, over the course of four years, Starlight held three fundraising auctions, two sales, one highway clean-up meeting and one potluck dinner at the community center.[4] Although it is possible that these functions were open to the general public in addition to Starlight's 600 members, the Nolans offered no evidence that any members of the general public were invited to, or attended, any of these events.[5]

¶ 15 Similarly, the minutes do not substantiate the Nolans' contention that Starlight held the community center open to the public for notary services. The minutes from Starlight's August 14, 1999 meeting state, "Naila will be at the [community center] 15 minutes prior to each monthly Board meeting for anyone requiring notary services." This statement, without more, would not allow a reasonable trier of fact to infer that the community center was open to the public for notary services. There is no evidence that Starlight advertised this service to the public at large or that members of the public came to the community center to obtain notary service.

■ ¶ 16 Moreover, even if the Board meeting minutes supported an inference that the community center was open to the public on the seven occasions identified and for notary services before each Board meeting, such evidence would not be sufficient to render the community center a public accommodation under the law. Generally, a facility is not regarded as a public accommodation unless it is open "indiscriminately to other members of the general public." *Jankey v. Twentieth Century Fox Film Corp.*, 14 F.Supp.2d 1174, 1178 (C.D.Cal.1998). As the court in that case stated, under the Americans with Disabilities Act of 1990, "occasional use of ... [a] private facility by the general public is not sufficient to convert that facility into a public accommodation." *Id.* (commis-

sary, store, and automated teller machine located on a private movie studio lot were not places of public accommodation despite evidence that they were occasionally made available to persons who were not studio employees or their guests).

¶ 17 Accordingly, the Nolans failed to raise a material question of fact regarding whether the Common Areas were "public accommodations" such that the ADA would apply to those areas. The trial court properly granted summary judgment for Starlight on this claim.

## C. The Nolans Did Not State a Claim under the FHA.

¶ 18 The Nolans argue that the trial court erred in granting summary judgment in favor of Starlight on their claim that Starlight violated the FHA by failing to ensure that the Common Areas complied with handicapped accessibility standards set forth in the statute.

¶ 19 The FHA provides that "[a] person may not discriminate ... in the terms, conditions or privileges of sale or rental of a dwelling or in the provision of services or facilities in connection with the dwelling," on the basis of the disability of the person seeking the dwelling. A.R.S. § 41–1491.19(B). Therefore, to state a claim for discrimination under the FHA, the Nolans were required to show that Starlight discriminated on the basis of Richard's disability, as defined by the statute:

> E. For the purposes of this section, "discrimination" includes:
>
> 1. *A refusal to permit, at the expense of the disabled person, reasonable modifications of existing premises* occupied or to be occupied by the person if the modifications may be necessary to afford the person full enjoyment of the premises. . . .

---

4. The deed restrictions placed on the community center limited its use to Starlight's Board Meetings and architectural committee meetings. Under the CC & Rs, social events, fundraising, and voting activities cannot be held in the building unless a special permit for the event is obtained; a maximum of four permits per year are allowed.

5. The minutes indicate that "community" members attended some of these functions, but do not specify whether these were Starlight Pines community members or members of the greater community of Happy Jack.

2. *A refusal to make reasonable accommodations in rules, policies, practices or services* if the accommodations may be necessary to afford the person equal opportunity to use and enjoy a dwelling.

3. *In connection with the design and construction of covered multifamily dwellings* for first occupancy after the date that is thirty months after the date of enactment of the federal fair housing amendments act of 1988 (P.L. 100–430), a failure to design and construct those dwellings in a manner that includes all of the following:

(a) The public use and common use portions of the dwellings are readily accessible to and useable by disabled persons.

(b) All the doors designed to allow passage into and within all premises within the dwellings are sufficiently wide to allow passage by disabled persons in wheelchairs.

(c) All premises within the dwellings contain the following features of adaptive design:

(i) An accessible route into and through the dwelling.

(ii) Light switches, electrical outlets, thermostats and other environmental controls in accessible locations.

(iii) Reinforcements in bathroom walls to allow later installation of grab bars.

(iv) Useable kitchens and bathrooms so that an individual in a wheelchair can maneuver about the space.

A.R.S. § 41–1419.19 (emphasis added).

¶ 20 Subsection D of section 41–1491.19 further provides that "[c]ompliance with the appropriate requirements of the fair housing accessibility guidelines established by the United States department of housing and urban development satisfies the require-ments of subsection [E(3)(c)]." These guidelines rely on the American National Standards Institute ("ANSI") Standard, but "are not mandatory [and] do not prescribe specific requirements … which, if not met, would constitute unlawful discrimination." U.S. Dep't of Hous. & Econ. Dev., Adoption of Final Guidelines, http://www.hud.gov/offices/f heo/disabilities/fhguidelines/fhefha1.cfm (last visited June 25, 2007) (emphasis omitted).

¶ 21 The Nolans conceded that they had "not yet made any reasonable accommodation requests" pursuant to the statute, but argued that they were not required to request accommodations because Starlight had not complied with the FHA's standards for handicapped access. In particular, the Nolans argued that the FHA required Starlight to adhere to the ANSI standards and claimed that their obligation to request a reasonable accommodation would arise only after Starlight satisfied these standards.[6]

¶ 22 The trial court ruled that the ANSI standards do not apply to the Common Areas of the Starlight Pines subdivision and found that because the Nolans had not requested a reasonable accommodation as required by the FHA, Starlight was entitled to summary judgment on this claim. We agree with the trial court that the ANSI standards are not applicable to Starlight's Common Areas. The FHA's requirement that housing be designed and constructed in a manner that makes it handicapped-accessible applies only to multifamily dwellings, i.e., buildings with four or more units, constructed after the early 1990s. A.R.S. § 41–1491.19(E)(3), (F). Because the Common Areas do not by themselves constitute a multifamily dwelling or dwellings, Starlight was not required to design or construct the Common Areas in accordance with the standards set forth in the FHA, *see* A.R.S. § 41–1491.19(D). Instead, Starlight was only required to honor the Nolans' reasonable requests for modification

---

6. The Nolans assert on appeal that their insistence that Starlight adhere to the ANSI standards constituted a request for reasonable accommodations. We decline to consider this argument, which was not raised in the trial court. *Napier v. Bertram*, 191 Ariz. 238, 239, ¶ 6, 954 P.2d 1389, 1390 (1998) (appellate court should only consider factual arguments presented to the trial court); *Crowe v. Hickman's Egg Ranch, Inc.*, 202 Ariz. 113, 116, ¶ 16, 41 P.3d 651, 654 (App.2002) (failure to raise theory in trial court waived argument on appeal).

or accommodation, *see* A.R.S. § 41–1491.19(E)(1).[7] As the Nolans made no such requests, Starlight did not violate the FHA.[8]

## D. Breach of Contract.

¶ 23 The Nolans argue that the trial court erred by granting summary judgment for Starlight on their breach of contract claim because, they allege, Starlight denied them their right and easement of enjoyment in their property, as promised to them in the CC & Rs.

¶ 24 Section 9.1 of the CC & Rs states:

*Owners' and Residents' Easements and Rights of Enjoyment in Community Facilities.* Subject to the controls and limitations set forth herein, every Owner, by reason of such ownership, shall have a right and easement of enjoyment in and to all Association Lands and community Facilities, and such easement shall be appurtenant to and shall pass with every Lot upon transfer. All Residents shall have a non-transferable privilege to use and enjoy all Association Lands and Community Facilities for as long as they are "Residents."

¶ 25 The Nolans contend that because Starlight has not made the Common Areas accessible to Richard, it has denied him access to these areas in contravention of Section 9.1 of the CC & Rs. "In Arizona, a recorded declaration that contains restrictive covenants common to all properties in a development forms a contract between 'the [development's] property owners as a whole and the individual lot owners.'" *Johnson v. Pointe Cmty. Ass'n*, 205 Ariz. 485, 489, ¶ 23,

73 P.3d 616, 620 (App.2003) (alteration in original) (quoting *Ariz. Biltmore Estates Ass'n v. Tezak*, 177 Ariz. 447, 448, 868 P.2d 1030, 1031 (App.1993)); *see also Pinetop Lakes Ass'n v. Hatch*, 135 Ariz. 196, 198, 659 P.2d 1341, 1343 (App.1983) ("The grantee who accepts a deed containing restrictive covenants has entered into a contractual relationship."). We interpret such covenants as a matter of law. *Johnson*, 205 Ariz. at 490, ¶ 23, 73 P.3d at 621.

¶ 26 The provision of the CC & Rs on which the Nolans rely is a grant of easement, a nonexclusive legal right to use and "enjoy" the designated Common Areas. The Nolans cite no case, and we have been able to fine none, that holds that when a homeowners' association grants an easement to its members to use common areas, it assumes an obligation to make whatever accommodations might be required to allow a homeowner to access the common areas. Although Section 9.1 of the CC & Rs provides that the Nolans, as owners of property located in the Starlight Pines subdivision, have a right to use and enjoy the subdivision's Common Areas, we do not read the provision as requiring Starlight to modify the Common Areas to permit Richard to enter or use the facilities in the Common Areas. Accordingly, we rule as a matter of law that Starlight did not breach Section 9.1 of the CC & Rs.

¶ 27 The Nolans further argue that by refusing to make the common areas handicapped-accessible, Starlight has, in effect, deprived them of the benefits they expected to receive under the CC & Rs.[9] A covenant of

---

7. The Nolans objected to the physical design and construction of the Common Areas, not to Starlight's rules, policies or practices. Nevertheless, the parties do not address whether the Nolans were required to request "reasonable modifications" of the Common Areas under section 41–1491.19(E)(1) or "reasonable accommodations" to Starlight's rules, policies, practices, or services under section 41–1491.19(E)(2). We need not resolve this issue, however, as we determine that the Nolans did not make any such request.

8. The authorities cited by the Nolans do not support their argument that they were not required to request a reasonable accommodation until after Starlight had complied with the ANSI standards. *Cimarron Foothills Cmty. Ass'n v.*

*Kippen*, 206 Ariz. 455, 460, ¶ 13, 79 P.3d 1214, 1219 (App.2003) (waiver of homeowners association rule regarding parking of recreational vehicles was not a necessary accommodation under federal fair housing law); *Canady v. Prescott Canyon Estates Homeowners Ass'n*, 204 Ariz. 91, 94, ¶ 13, 60 P.3d 231, 234 (App.2002) (association's refusal to waive minimum age requirement violated reasonable accommodation requirement under federal and state fair housing laws).

9. Although the Nolans do not expressly raise on appeal their claim that Starlight breached the covenant of good faith and fair dealing implied in the CC & Rs, the substance of their argument encompasses this issue. Moreover, Starlight

good faith and fair dealing, which "prohibits a party from doing anything to prevent other parties to [a] contract from receiving the benefits ... of the agreement," is implied in every contract under Arizona law. *Wells Fargo Bank v. Arizona Laborers, Local No. 395 Pension Trust Fund,* 201 Ariz. 474, 490, ¶ 59, 38 P.3d 12, 28 (2002). A party may breach the implied covenant even in the absence of a breach of an express provision of the contract by denying the other party the reasonably expected benefits of the agreement. *Id.* at 491–92, ¶¶ 64, 66, 38 P.3d at 29–30.

¶ 28 In the absence of any authority to the contrary, we conclude the CC & Rs do not contain an implied promise by Starlight to modify the easement areas to make them physically accessible to each association member. The trial court correctly entered summary judgment in favor of Starlight on the Nolans' claim for breach of the implied covenant of good faith and fair dealing.

¶ 29 Moreover, even assuming that the CC & Rs imposed on Starlight the duty the Nolans allege, Starlight presented evidence that Richard had never tried to use the gates about which he complained, nor did he recall trying to enter the greenbelt area before the boulders were installed. In fact, he testified that the grade of the greenbelt prevented him from ambulating into that area. Moreover, the boulders restrict access only "in a few spots in the greenbelts." Starlight also showed that Richard admitted that he had accessed the community mailbox area, and that after he complained about the trash compactor area, Starlight installed trash cans for easier access. It also demonstrated that it had improved the parking lot and installed handicapped parking spaces near roll-up doors to the community center. The Nolans did not offer evidence sufficient to create a material fact about these allegations.

¶ 30 For all of these reasons, the trial court properly granted summary judgment for Starlight on the Nolans' breach of contract and breach of the implied covenant claims.

**E. Nuisance.**

¶ 31 The Nolans allege that Starlight created a nuisance by installing gates in the fence abutting the greenbelt area adjacent to the Nolans' property, which they argue allowed the general public to access the greenbelt and dramatically increased the traffic and noise along the greenbelt and interfered with their enjoyment of their property.

¶ 32 To prevail on their nuisance claim, the Nolans were required to prove that Starlight's actions unreasonably interfered with their use and enjoyment of their property, causing significant harm. *Graber v. City of Peoria,* 156 Ariz. 553, 555, 753 P.2d 1209, 1211 (App.1988); Restatement (Second) of Torts ("Restatement") §§ 821D & 821F (1979). The interference must be "substantial, intentional and unreasonable under the circumstances." *Armory Park Neighborhood Ass'n v. Episcopal Cmty. Servs. in Ariz.,* 148 Ariz. 1, 7, 712 P.2d 914, 920 (1985). It must constitute "more than slight inconvenience or petty annoyance. The law does not concern itself with trifles, and therefore there must be a real and appreciable invasion of the plaintiff's interests...." Restatement § 821F cmt. c. Further, "nuisance ordinarily implies a continuity or recurrence of action over a substantial period of time." *Kubby v. Hammond,* 68 Ariz. 17, 25, 198 P.2d 134, 140 (1948); *see also* Restatement § 821F cmt. g ("[C]ontinuance or recurrence of the interference is often necessary to make the harm significant.").

¶ 33 Viewing the evidence in the light most favorable to the Nolans, the record does not contain the specific evidence necessary to support their nuisance claim.[10] Indeed, the

---

does not assert that the Nolans abandoned this issue on appeal.

**10.** With the Nolans' motion for reconsideration they submitted affidavits by Richard dated March 19, 2005 and July 18, 2005, in which he avowed that the fence bordering the greenbelt did not contain a gate when the Nolans purchased Lot 469, that on May 30, 2005, two ATVs attempted

to enter the greenbelt gate and, unable to do so, fled noisily, and that on May 31, 2005, two groups of pedestrians entered the greenbelt through the newly installed gate and traversed the greenbelt and Lot 596. We are reluctant to consider facts offered in the trial court for the first time in a motion for reconsideration. *See Evans Withycombe, Inc. v. W. Innovations, Inc.,*

Nolans offered no evidence at all that the use of the greenbelt increased after the gate was installed or that such use substantially and unreasonably interfered with their use and enjoyment of their property.[11] The trial court properly granted summary judgment for Starlight on this claim.[12]

## F. The Fee Award Was Proper Under A.R.S. § 12–341.01(A).

¶ 34 Finally, the Nolans complain that the trial court erred by awarding attorney's fees to Starlight pursuant to A.R.S. § 12–341.01(A). The application of A.R.S. § 12–341.01(A) is a question of law that we review de novo. Ramsey Air Meds, L.L.C. v. Cutter Aviation, Inc., 198 Ariz. 10, 13, ¶ 12, 6 P.3d 315, 318 (App.2000). However, we review the trial court's decision regarding the amount of fees awarded for an abuse of discretion. Id.

¶ 35 Section 12–341.01(A) provides for a discretionary award of attorney's fees to the prevailing party in an action arising out of contract. The Nolans argue that because Starlight denied the validity of the Nolans' contract claim and the trial court found that the CC & Rs did not require Starlight to make the Common Areas handicapped-accessible, Starlight could not claim an award of fees pursuant to A.R.S. § 12–341.01(A).

¶ 36 The Nolans' position is plainly inconsistent with Arizona law, which provides that under the statute, a court may award fees to a defendant in a contract action if the defendant prevails on the basis that there is no

contract or there has been no breach of the contract. Mullins v. S. Pac. Transp. Co., 174 Ariz. 540, 543, 851 P.2d 839, 842 (App. 1992) (fact that defendants proved the non-existence of a contractual relationship does not preclude an award of attorney's fees under section 12–341.01 if plaintiff's claim arose out of contract) (citing Trebilcox v. Brown & Bain, P.A., 133 Ariz. 588, 591, 653 P.2d 45, 48 (App.1982)); Shirley v. Hartford Accident & Indem. Co., 125 Ariz. 70, 71, 607 P.2d 389, 390 (App.1979) (defendant may recover an award of attorney's fees under section 12–341.01 when the plaintiff has asserted an action for breach of contract but fails to prevail). The trial court properly granted Starlight an award of the attorney's fees it incurred defending the Nolans' contract claim.[13]

¶ 37 The Nolans nevertheless complain that even if the trial court properly awarded attorney's fees to Starlight, the amount of fees awarded was unreasonable. In Schweiger v. China Doll Rest., Inc., 138 Ariz. 183, 673 P.2d 927 (App.1983), we held that an attorney's affidavit supporting a fee application should include "the type of legal services provided, the date the service was provided, the attorney providing the service . . . and the time spent in providing the service." Id. at 188, 673 P.2d at 932. The affidavit submitted by Starlight's counsel set forth this information with sufficient detail.

¶ 38 Although the Nolans assert that Starlight's counsel's billings are inflated and that much of counsel's work was unnecessary,

---

215 Ariz. 237, 240, ¶ 15, 159 P.3d 547, 550 (2006) (court of appeals generally does not consider arguments raised for first time on a motion for reconsideration to the trial court). Nevertheless, the affidavits do not offer facts that create a material issue with respect to the nuisance claim. The mere presence of the gate is not sufficient evidence, by itself, on which to base a claim for nuisance. Neither is such a claim supported by the presence of two groups of pedestrians traversing the greenbelt and Lot 596. While the frequent or routine presence of noisy ATVs might support such a claim, the Nolans offered evidence of only one such occurrence. See Restatement § 821F cmt. g.

11. We reject the Nolans' contention that the trial court did not allow them an opportunity to gather evidence to demonstrate the effect of this

activity on their property, as the Nolans did not request a continuance pursuant to Arizona Rule of Civil Procedure 56(f).

12. The Nolans also argue that Starlight "unofficially" abandoned another greenbelt in the Starlight Pines subdivision to the adjacent homeowners and that its different treatment of the Nolans constitutes a nuisance. Again, however, the only evidence the Nolans cite in support of these allegations was submitted with their motion for reconsideration. We therefore decline to consider this argument on appeal. See Evans Withycombe, Inc., 215 Ariz. at 240, ¶ 15, 159 P.3d at 550.

13. The trial court explicitly stated that its award related only to those fees incurred on the contract claim.

these challenges are insufficient as a matter of law. Once a party establishes its entitlement to fees and meets the minimum requirements in its application and affidavit for fees, the burden shifts to the party opposing the fee award to demonstrate the impropriety or unreasonableness of the requested fees. *State ex rel. Corbin v. Tocco,* 173 Ariz. 587, 594, 845 P.2d 513, 520 (App.1992). "[A]n opposing party does not meet [that] burden merely by asserting broad challenges to the application. It is not enough ... simply to state, for example, that the hours claimed are excessive and the rates submitted too high." *Id.* (quoting *Arizona v. Maricopa County Med. Soc'y,* 578 F.Supp. 1262, 1264 (D.Ariz. 1984)); *see also Dillig v. Fisher,* 142 Ariz. 47, 51, 688 P.2d 693, 697 (App.1984).

¶ 39 The Nolans did not present specific objections to the reasonableness of the fees requested. Rather, they argued generally that Starlight's counsel spent excessive time defending the case and questioned the necessity of various aspects of counsel's work. In its reply to the Nolans' objection to the fee application, Starlight gave an adequate explanation of why the fees were in proportion to the Nolans' discovery requests and theories of liability. Accordingly, we find no abuse of discretion in the trial court's award of attorney's fees to Starlight.

## CONCLUSION

¶ 40 For the foregoing reasons, we affirm the trial court's judgment. Upon its compliance with Arizona Rule of Civil Appellate Procedure 21(a) and (c), we grant Starlight's request for costs and its request for reasonable attorney's fees incurred in connection with the contract claims on this appeal pursuant to A.R.S. § 12–341.01.

CONCURRING: PHILIP HALL and G. MURRAY SNOW, Judges.

