NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

KENNETH IVEY AND CYNTHIA IVEY, husband and wife; KENNETH R. IVEY and CYNTHIA C. IVEY as Trustees of The Ivey Family Living Trust dated July 23, 2008, *Plaintiffs/Appellants*,

*v.*

TURNING POINT HOMES AND DEVELOPMENT, INC., an Arizona corporation, *Defendant/Appellee*.

No. 1 CA-CV 23-0021
FILED 11-14-2023

Appeal from the Superior Court in Yavapai County
No. P1300CV201801126
P1300CV201901051
P1300CV202000967

The Honorable John David Napper, Judge

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED**

COUNSEL

J. Jeffrey Coughlin PLLC, Prescott
By J. Jeffrey Coughlin
*Counsel for Plaintiffs/Appellants*

Harris Law Firm, PLLC, Prescott
By Lynn M. Harris
*Co-Counsel for Defendant/Appellee*

Prescott Law Group, PLC, Prescott
By Taylor R. Nelson
*Co-Counsel for Defendant/Appellee*

---

**MEMORANDUM DECISION**

Judge Daniel J. Kiley delivered the decision of the Court, in which Vice Chief Judge Randall M. Howe and Judge Jennifer M. Perkins joined.

---

**K I L E Y**, Judge:

¶1　　　Cynthia Ivey and her husband Kenneth Ivey, both in their individual capacities and as Trustees for The Ivey Family Living Trust dated July 23, 2008 (collectively, the "Iveys"), asserted claims against various defendants arising out of alleged damage to the Iveys' property resulting from the construction of a house on a neighboring lot. They asserted claims against Turning Point Homes & Development, Inc. ("Turning Point") for conversion, trespass, nuisance, declaratory relief, and injunctive relief, alleging that Turning Point is responsible for the unauthorized destruction of the Iveys' landscaping and the installation of pavers on their lot without their consent. The superior court granted summary judgment in Turning Point's favor on all of the Iveys' claims against Turning Point, and the Iveys now appeal.

¶2　　　The superior court correctly held that Turning Point was entitled to summary judgment on the Iveys' nuisance and declaratory relief claims. However, Turning Point was not entitled to summary judgment on the remaining claims because it failed to establish that there were no genuine issues of material fact and that it was entitled to judgment as a matter of law. Consequently, we affirm in part, reverse in part, and remand for further proceedings consistent with this decision.

## FACTS AND PROCEDURAL HISTORY

¶3　　　The Iveys own a house on a lot in Prescott Vistas subdivision in Prescott. Captiva Investments III, LLC ("Captiva") owned the property (the "Adjacent Lot") next to the Iveys' lot, which it later sold to Phillip and Kathleen Stewart (the "Stewarts"). Both the Iveys' lot and the Adjacent Lot are subject to Covenants, Conditions, and Restrictions ("CCRs") which provide in part that "each Lot is to have vehicular access to the residence by means of a driveway," which may be shared and located "wholly within . . . an adjacent property."

¶4        The neighborhood's Final Plat establishes a 34-foot-wide ingress and egress easement on the Iveys' property for the benefit of the Adjacent Lot. The Iveys landscaped the easement with decorative gravel placed over a polypropylene underlayment that served to keep the area free of weeds.

¶5        Viewed in the requisite light most favorable to the party against whom summary judgment was granted, *Doe v. Roman Cath. Church of Diocese of Phx.*, 255 Ariz. 483, 486, ¶ 2 (App. 2023), the evidence shows that Captiva retained Turning Point to serve as general contractor to construct a house on the Adjacent Lot. As part of the construction process, Turning Point (or a subcontractor acting at its direction) removed the gravel and underlayment from a portion of the Iveys' lot that is subject to the driveway easement, installed pavers to serve as a driveway, then placed landscaping rocks on the remainder. After construction was complete, the Stewarts bought the house and lot from Captiva.

¶6        The Iveys brought claims against Turning Point for damages and injunctive and declaratory relief, alleging that the removal of landscaping material and the installation of pavers damaged their land and interfered with their rights as property owners. The Iveys also asserted claims against Captiva, the Stewarts, and the City of Prescott.

¶7        Turning Point moved for summary judgment on all counts, which the superior court granted after briefing and argument. The court also awarded Turning Point attorney fees pursuant to A.R.S. §§ 12-341.01 and 12-349. The Iveys then moved for a new trial, which the court denied. The Iveys timely appealed. We have jurisdiction under A.R.S. § 12-2101(A)(1).

**DISCUSSION**

¶8        Summary judgment may be granted when there is "no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). The party moving for summary judgment "must come forward with evidence it believes demonstrates the absence of a genuine issue of material fact and must explain why summary judgment should be entered in its favor." *Nat'l Bank of Ariz. v. Thruston*, 218 Ariz. 112, 115, ¶ 14 (App. 2008). Only if the moving party "satisfies [its] burden" of making a *prima facie* showing that "there are no genuine issues of material fact and it is entitled to summary judgment as a matter of law" does the burden shift to the non-moving party "to come forward with evidence establishing the existence of a genuine issue of

material fact." *Id.* at 114-15, ¶ 12. "Where the evidence or inferences would permit a jury to resolve a material issue in favor of either party, summary judgment is improper." *Id.* at 116, ¶ 17 (cleaned up).

¶9            "We review de novo a grant of summary judgment, viewing the evidence and reasonable inferences in the light most favorable to the party opposing the motion." *Zambrano v. M & RC II LLC*, 254 Ariz. 53, 58, ¶ 9 (2022) (citation omitted).

## I.     Conversion

¶10            The Iveys assert that the superior court erred in granting summary judgment on their conversion claim because, although "[p]art of" the landscaping material removed from the easement on their land "had been replaced," some of the material that was removed "was never replaced."

¶11            One commits the tort of conversion by intentionally exercising "dominion or control over a chattel" in a manner "which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Miller v. Hehlen*, 209 Ariz. 462, 472, ¶ 34 (App. 2005) (quoting Restatement (Second) of Torts § 222A(1) (1965)).

¶12            Turning Point argues that it cannot be liable for conversion of the Iveys' landscaping material because it "was not solely responsible for the construction of the house" on the Adjacent Lot. Without conceding that the Iveys sustained any damage to their landscaping, Turning Point asserts that, "[t]o the extent that the construction" of the house on the Adjacent Lot caused "the destruction of the Iveys' landscaping, the Iveys have presented no evidence or legal theory showing that Turning Point should be held responsible." Turning Point asserts, in effect, that the Iveys have failed to establish that Turning Point, as opposed to another contractor or third party, caused damage to the Iveys' landscaping.

¶13            In support of their conversion claim, the Iveys submitted, to the superior court, Cynthia Ivey's affidavit stating in part that "Turning Point removed a portion of the existing surface materials on the Ivey property and replaced it with concrete pavers and rocks lining the pavers." In reply, Turning Point did not dispute this assertion, asserting instead that, "upon the conclusion of the construction of" the house on the Adjacent Lot, Turning Point "purchased, delivered, and landscaped the rock at no cost to [the Iveys], making them whole." Because Turning Point failed to controvert the evidence presented by the Iveys showing that Turning Point

itself removed landscaping material from their property, and instead asserted that it replaced whatever was taken, we decline to consider Turning Point's belated efforts to shift blame for the removal of the landscaping material to an unidentified third party. *See BMO Harris Bank N.A. v. Espiau*, 251 Ariz. 588, 593-94, ¶ 25 (App. 2021) (noting that arguments and legal theories not raised in superior court are waived on appeal).

¶14 Turning Point next argues that "[a]ssuming, *arguendo*, that Turning Point converted the landscape rock," the court correctly granted summary judgment on the Iveys' conversion claim because Turning Point "replaced all of the removed landscaping rock." According to Turning Point, its replacement of the landscaping material "renders" the conversion claim "moot" because, it contends, damages for conversion are limited to the value of the converted property.

¶15 Turning Point's assertion that damages for conversion are limited to the value of the converted property is incorrect as a matter of law. As this Court has long recognized, "the measure of conversion damages includes *not only* the value of the property taken, *but also* other damage suffered because of the wrongful detention or deprivation of the property, such as damages for loss of use." *Collins v. First Fin. Servs., Inc.*, 168 Ariz. 484, 486 (App. 1991) (emphasis added).

¶16 In any event, whether Turning Point did, in fact, replace all of the landscaping material is disputed. In her affidavit, Cynthia Ivey stated that Turning Point "did not replace the surface materials on our property which existed before construction began," explaining that Turning Point "replaced" the original "gravel and weed cloth" with dissimilar material in the form of "large rocks, concrete pavers, and boulders."

¶17 Turning Point argues that Cynthia Ivey's affidavit is insufficient to defeat summary judgment because, it contends, the law prohibits "self-serving attempts to avoid judgment." Turning Point is incorrect. The law establishes no such prohibition, and the fact that a party's sworn statements are self-serving does not, without more, render those statements inadmissible. *See State v. Conn*, 137 Ariz. 152, 155 (App. 1982) (recognizing that defendant's out-of-court statements "were not inadmissible simply because they were self serving," and an objection on that basis "alone would not be valid"). Cynthia Ivey's sworn denial of Turning Point's claim to have replaced all of the Iveys' original landscaping material creates an issue of material fact precluding summary judgment on the Iveys' conversion claim.

¶18        The Iveys also assert that Turning Point "never rectified the converted lateral support soils" or "restore[d] the soil elevation" by replacing the soil removed when the pavers were installed. Turning Point responds that the Iveys waived any claim relating to the destruction of "lateral support soils" because they purportedly raised it "for the first time" in their response to Turning Point's summary judgment motion. The record refutes this assertion. In interrogatory responses served in January 2020, the Iveys identified Turning Point's "remov[al] [of] the lateral support" of the easement on their property, which caused a "shifting" of the surrounding ground, as part of the damages they have sustained. The Iveys' evidence that Turning Point removed lateral support soils from their property establishes another factual dispute precluding summary judgment on the Iveys' conversion claim. We therefore reverse summary judgment on that claim.

## II.    Trespass

¶19        The Iveys next argue that genuine issues of material fact precluded summary judgment on their trespass claim.

¶20        An individual "is subject to liability" for trespass "if he intentionally (a) enters land in the possession of the other, or causes a thing or a third person to do so, or (b) remains on the land, or (c) fails to remove from the land a thing which he is under a duty to remove." Restatement (Second) of Torts § 158 (1965).[1] A trespass can be established by the construction of improvements to another's land without the owner's consent. *See id.* Proof of actual damages is not required, and "[w]hen a trespass does not result in actual harm, the aggrieved party may bring an action for nominal damages." *SWC Baseline & Crismon Invs., L.L.C. v. Augusta Ranch Ltd. P'ship*, 228 Ariz. 271, 292, ¶ 95 (App. 2011).

¶21        In response to the Iveys' trespass claim, Turning Point claims that it "did not lay the pavers," explaining that "[a]ll Turning Point did was tell the subcontractor to lay the pavers in accordance with" the approved construction plans. Even if true, Turning Point's contention that no Turning Point employee personally placed pavers on the Iveys' property, and that Turning Point merely "[told] the subcontractor" to do so, is no defense to the Iveys' trespass claim. After all, one may commit a trespass by causing a third party to enter another's land. Restatement (Second) of Torts § 158(a)

---

[1] "In the absence of contrary Arizona authority, we follow the Restatement of the Law." *Lerner v. DMB Realty, LLC*, 234 Ariz. 397, 404, ¶ 25 n.7 (App. 2014).

(1965); *see also SWC Baseline*, 228 Ariz. at 292-93, ¶ 98 (reversing directed verdict on property owner's trespass claim and holding that, because "[developer's] principal admitted [developer] hired [contractor] to enter onto [owner's land] for construction work," "no reasonable jury could have found [owner] failed to prove" developer and contractor "intentionally entered or caused another to enter [owner's] land").

¶22        Turning Point next argues that the Iveys presented "no set of facts" from which "any reasonable jury could find that Turning Point was engaged in an ongoing trespass of the Iveys' property." This argument is unavailing for two reasons. First, a trespass need not be "ongoing" to give rise to liability; a completed trespass may give rise to liability as well. *See SWC Baseline*, 228 Ariz. at 292-93, ¶ 98. Second, as far as the record shows, the pavers that were installed at Turning Point's direction are still located on the Iveys' property. Assuming *arguendo* that installing the pavers on the Iveys' property constituted a trespass, their continued presence on the property constitutes an ongoing trespass. Restatement (Second) of Torts § 161 cmt. b (1965) ("[An] actor's failure to remove from land in the possession of another a structure, chattel, or other thing which he has tortiously erected or placed on the land constitutes a continuing trespass for the entire time during which the thing is wrongfully on the land."); *see also La Loma Grande LLC v. United States*, CV-11-00476-TUC-RM, 2016 WL 8114197, at *12 (D. Ariz. July 27, 2016) (granting relief to owner of property adjacent to outdoor shooting range used for target practice by Border Patrol agents and holding, *inter alia*, that government's "failure to remove" stray bullets from plaintiff's property "constitutes a continuing trespass").

¶23        Because Turning Point's contention that it merely "[told] the subcontractor" to lay the pavers on the Iveys' property is not, as a matter of law, a defense to the Iveys' trespass claim, and because a reasonable jury could find that Turning Point committed a trespass by directing a third party to install pavers on the Iveys' land, we reverse the entry of summary judgment on this claim.

## III.   Nuisance

¶24        The Iveys next argue that the court erred in granting summary judgment on their nuisance claim.

¶25        An unreasonable interference with others' "use and enjoyment of their property" in a manner that "caus[es] significant harm" may constitute a common law nuisance. *Nolan v. Starlight Pines Homeowners Ass'n*, 216 Ariz. 482, 489, ¶ 32 (App. 2007). A "petty annoyance" will not

suffice; to rise to the level of a nuisance, "[t]he interference must be substantial, intentional and unreasonable under the circumstances." *Id.* (cleaned up). Although the Iveys contend that the pavers "constitute[] a nuisance," they neither explain how the pavers unreasonably interfere with their use and enjoyment of their property nor cite any evidence in the record on that point. At oral argument before this Court, the Iveys' counsel conceded that the pavers do not prevent them from using and enjoying their property. In the absence of evidence from which a jury could find a "substantial, intentional and unreasonable" interference with the Iveys' use and enjoyment of their property, the Iveys have failed to establish any basis for a common law nuisance claim. *See id.*

**¶26** The Iveys primarily base their nuisance claim on Paragraph 10.10 of the CCRs, which provides in part that any violation of the CCRs is "a nuisance and may be enjoined or abated." They do not, however, point to any particular provision of the CCRs that Turning Point purportedly violated by directing a subcontractor to install the pavers on their lot. In any case, Turning Point is not (as far as the record shows) a property owner in the subdivision, and so is not bound by the CCRs. *See Garden Lakes Cmty. Ass'n, Inc. v. Madigan*, 204 Ariz. 238, 241, ¶ 12 (App. 2003) ("[CCRs] constitute[] a contract between the subdivision's property owners as a whole and the individual lot owners.") (cleaned up). Because, with limited exceptions inapplicable here, a contract's provisions cannot be enforced against a nonparty, *see JTF Aviation Holdings Inc. v. CliftonLarsonAllen LLP*, 249 Ariz. 510, 513-14, ¶ 18 (2020), the Iveys cannot enforce Paragraph 10.10 of the CCRs against Turning Point.

**¶27** The Iveys also assert that Turning Point "intentionally and unreasonably interfered with" their use of their property when it parked construction vehicles on their property without their consent. They base this assertion on the allegation in their verified complaint that "Captiva and/or Turning Point parked" on the Iveys' property "without legal right or permission."

**¶28** Assuming that parking on someone else's property without permission, by itself, constitutes a common law nuisance and not merely a "petty annoyance," the Iveys' allegation that Turning Point "and/or" another defendant committed a tort is insufficiently specific to support a finding of either defendant's liability. *Cf. Cullen v. Auto-Owners Ins. Co.*, 218 Ariz. 417, 419, ¶¶ 6-7 (2008) (noting that vague and conclusory allegations that do not "give the opponent fair notice of the nature and basis of the claim" are insufficient to state a claim for relief) (citation omitted). Similarly, in her affidavit, Cynthia Ivey complained that "[v]ehicles parked on the

Easement interfere with access to our property" but never stated that the offending vehicles were owned by Turning Point or operated by its personnel. Turning Point acknowledges that "many cars . . . may have parked on" the Iveys' property during the construction of the house on the Adjacent Lot but asserts, correctly, that "there is no evidence that Turning Point is responsible for any of them." Because the Iveys have cited no record evidence to support a nuisance claim against Turning Point, we affirm summary judgment on that claim.

## IV. Declaratory Relief

¶29 The Iveys contend that the court erred in granting summary judgment on their declaratory relief claim because Turning Point's "multiple actions and inactions during the construction of the house along with its liability as an agent of Captiva render it subject to the declaratory relief [they] requested." Turning Point responds that declaratory relief is not available because the parties have "no contractual or legal agreement." The Uniform Declaratory Judgments Act confers broad jurisdiction on courts "to declare rights, status, and other legal relations," A.R.S. § 12-1831, and a contractual relationship between the parties is not a prerequisite to declaratory relief, *see Canyon del Rio Invs., L.L.C. v. City of Flagstaff*, 227 Ariz. 336, 342, ¶ 25 (App. 2011) (observing that disagreement between developer and municipal officials over whether municipal zoning code barred developer's residential development proposal was "sufficient to establish a justiciable controversy to support [developer's] request for declaratory relief").

¶30 As the parties seeking declaratory relief, however, the Iveys bore the burden of justifying their request. They utterly failed to meet that burden. Although they seek "a declaration of their rights and status under the circumstances of this case, which includes the construction contract, construction documents, plans, permits and ordinances of the City of Prescott," they do not identify what it is, precisely, that they seek to have declared. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (requiring parties seeking declaratory relief to request "specific relief through a decree of a conclusive character") (citation omitted). The vagueness of the Iveys' request leaves the court unable to fashion meaningful relief. *See, e.g.*, *United States v. Washington*, 759 F.2d 1353, 1357 (9th Cir. 1985) (noting that declaratory relief is not available "when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties"). We see no error in the

grant of summary judgment on the Iveys' nebulous declaratory relief claim and therefore affirm.

## V.        Injunctive Relief

**¶31**        The Iveys next argue that because Turning Point altered the condition of their property, they are entitled to an injunction "commanding [Turning Point] [t]o restore the landscaped area to its pre-damaged condition" and prohibiting Turning Point "from continuing to damage the Landscaped Area." In response, Turning Point argues that the Iveys are not entitled to their requested relief because, it contends, "[b]y its very definition, an injunction is a court order that *stops* someone, or some legal entity, from doing something" and cannot be used to order "someone *to do something*."

**¶32**        Turning Point is incorrect; courts have authority to issue mandatory injunctions to "compel[] some positive action by the party enjoined." *State ex rel. Corbin v. Portland Cement Ass'n*, 142 Ariz. 421, 425 (App. 1984); *see also Swain v. Bixby Vill. Golf Course Inc.*, 247 Ariz. 405, 410, 414, ¶¶ 18, 37 (App. 2019) (affirming mandatory injunction requiring defendant property owner "to restore and operate a golf course" as required by governing CCRs); *Burton v. Celentano*, 134 Ariz. 594, 597 (App. 1982) (affirming mandatory injunction requiring defendants to remove wall they constructed on their property in violation of floodplain statutes and ordinance).

**¶33**        Under appropriate circumstances, injunctive relief may be granted to a party that prevails on a claim for conversion or trespass. *See, e.g., City of Flagstaff v. Ariz. Dep't of Admin.*, ___ Ariz. ___, ___, ¶ 18, 526 P.3d 152, 158 (App. 2023) ("Injunctive relief is available . . . when the injury is not remediable by damages.") (cleaned up); *Cracchiolo v. State*, 135 Ariz. 243, 247 (App. 1983) (recognizing that "money damages" may not be adequate remedy for an "alleged trespass . . . of a continuing nature"). We cannot say, based on the present record, whether circumstances justifying injunctive relief are present here. Because Turning Point offers no argument in opposition to the Iveys' claim for such relief other than its incorrect contention that courts lack authority to grant mandatory injunctions, and we cannot determine whether the Iveys' injury is remediable by damages, we reverse the grant of summary judgment on the Iveys' claim for injunctive relief.

## VI.        Attorney Fees

¶34 Finally, the Iveys argue the superior court improperly awarded attorney fees under A.R.S. § 12-349 and A.R.S. § 12-341.01. Because we reverse the court's judgment in part and remand for further proceedings, we vacate the attorney fees award. We note, however, that the court's finding that the Iveys' claims "lacked sufficient legal basis" is too conclusory to support an award of fees under A.R.S. § 12-349. *See* A.R.S. § 12-350 ("In awarding attorney fees pursuant to section 12-349, the court *shall set forth the specific reasons* for the award.") (emphasis added). The court's failure to set forth the requisite "specific reasons for the award" of fees under A.R.S. § 12-349 establishes an independent basis to vacate the award. *See Hatch v. Klump*, 2 CA-CV 2015-0203, 2017 WL 491658, at * 5, ¶ 20 (Ariz. App. Feb. 1, 2017) (mem. decision) ("Failure to make findings [required by A.R.S. § 12-350] may be reversible error.").

## CONCLUSION

¶35 We affirm the judgment in part, reverse in part, and remand for further proceedings consistent with this decision.

¶36 The Iveys have not requested attorney fees on appeal; Turning Point has. Because we reverse in part and affirm in part, we deny Turning Point's request in the exercise of our discretion. The Iveys may recover taxable costs on appeal.



AMY M. WOOD • Clerk of the Court
FILED: AA