IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO


| | | |
|---|---|---|
| CIMARRON FOOTHILLS COMMUNITY ASSOCIATION, an Arizona corporation, | ) ) ) | 2 CA-CV 2003-0048 DEPARTMENT A |
| Plaintiff/Counterdefendant/Appellee, | ) ) | O P I N I O N |
| v. | ) ) | |
| JAMES KIPPEN and BETTY KIPPEN, husband and wife, | ) ) ) | |
| Defendants/Counterclaimants/Appellants. | ) ) ) | |


APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. C-20011026

Honorable Ted B. Borek, Judge

AFFIRMED

---

Haralson, Miller, Pitt, Feldman and McAnally
  By Stanley G. Feldman                                                     Tucson

    and

Parrish & Berry
  By Richard Parrish                                                        Tucson
                                                              Attorneys for Defendants/
                                                             Counterclaimants/Appellants

John A. Baade                                                              Tucson

    and

Tanis A. Duncan                                              Tucson
Attorneys for Plaintiff/
Counterdefendant/Appellee

H O W A R D, Judge.

¶1        After a bench trial, the trial court found that appellee Cimarron Foothills Homeowners Association was entitled to enforce its deed restrictions against appellants James and Betty Kippen, despite the Kippens' claim that the restrictions violated the federal Fair Housing Amendments Act ("FHAA"). The Kippens argue the trial court erred in finding that their proposed accommodation was not reasonable and necessary under the FHAA and would extend a preference to them. Because the trial court did not clearly err in finding that the Kippens failed to demonstrate the necessity of their proposed accommodation, we affirm.

## BACKGROUND

¶2        "We view the facts in the light most favorable to sustaining the trial court's judgment." *Southwest Soil Remediation, Inc. v. City of Tucson*, 201 Ariz. 438, ¶2, 36 P.3d 1208, ¶2 (App. 2001). For several years, James and Betty Kippen have operated an elder care facility out of their home in Cimarron Foothills Estates. Together, they care for approximately nine elderly people who, because of various health problems, require assistance in their daily lives. As part of their services, the Kippens regularly transport their residents to doctor's appointments and social functions. The Kippens also arrange several extended vacations per year for their residents, some lasting as long as six weeks. For most of these trips and errands, the Kippens use a large recreational vehicle ("RV") that has enough room for the residents' medical equipment and has a bathroom, which some of the residents require on even the shortest trips.

2

When not traveling, the Kippens generally park the RV on their property, but, contrary to the "conditions, reservations and restrictions" ("CR&R's") applicable to their property, they do not keep it in a garage or other enclosure. The RV is therefore often visible to several of the Kippens' neighbors.

¶3　　　　In 2000, responding to a neighbor's complaint, the Cimarron Foothills Homeowners Association notified the Kippens that they could not park the RV on their property in violation of the CR&R's. The Kippens eventually moved the RV, keeping it in storage for approximately five weeks. This arrangement, however, was inconvenient for the Kippens and their residents, so the Kippens brought the RV back to their property. As a result, the Association filed this action, seeking an injunction to force the Kippens to comply with the CR&R's. The Kippens filed a counterclaim, alleging that, under the FHAA, parking the RV on their lot was "reasonable" and "necessary to afford [the residents] equal opportunity to use and enjoy" their home. 42 U.S.C. § 3604(f)(3)(B). The Kippens therefore requested a declaratory judgment authorizing them to park the RV on their property, without an enclosure, as an accommodation under the FHAA.

¶4　　　　After a two-day bench trial, the trial court determined that "some accommodation" was reasonable and necessary but that such an accommodation "d[id] not extend to allowing the [RV] to be parked on the premises at all times when the Kippens are in residence." The trial court further found that the Kippens' proposed accommodation would "extend . . . a preference . . . not necessary for the equal opportunity to enjoy their home" in that "[o]ther residents would be required to have a garage or enclosed structure to park a recreational vehicle on their premises regularly." Accordingly, the trial court ruled in favor of the Association and permanently

3

enjoined the Kippens from keeping the RV on their property, "other than in an enclosed garage."[1]

The Kippens now appeal that judgment.

## DISCUSSION

¶5    Pursuant to the relevant portion of the FHAA, 42 U.S.C. § 3604(f)(2), it is unlawful

> [t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of—
> (A) that person; or
> (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or
> (C) any person associated with that person.

And, pursuant to 42 U.S.C. § 3604(f)(3)(B), discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." Thus, as the trial court recognized, a proposed accommodation under the FHAA must be "(1) reasonable and (2) necessary (3) to afford handicapped persons equal opportunity to use and enjoy housing." *See Lapid-Laurel, L.L.C. v. Zoning Bd. of Adjustment*, 284 F.3d 442, 457 (3rd Cir. 2002).

¶6    We generally defer to federal courts' interpretation of federal law. *PLM Tax Certificate Program 1991-92, LP v. Denton Investments, Inc.*, 195 Ariz. 210, ¶16, 986 P.2d 243, ¶16 (App. 1999). "Congress intended the FHAA to protect the right of handicapped persons to live in the residence of their choice in the community." *City of Edmonds v. Washington State*

---

[1]The trial court also ordered the Association to "keep its offer open to allow a setback to [the Kippens] for the construction of a garage."

*Bldg. Code Council*, 18 F.3d 802, 806 (9th Cir. 1994), *aff'd, City of Edmonds v. Oxford House, Inc.*, 514 U.S. 725, 115 S. Ct. 1776, 131 L. Ed. 2d 801 (1995). "The statute is worded as a broad mandate to eliminate discrimination against and equalize housing opportunities for disabled individuals." *Bronk v. Ineichen*, 54 F.3d 425, 428 (7th Cir. 1995). When interpreting the reasonable accommodation provisions of the FHAA, courts generally rely on case law and other authority interpreting the similar provisions under both the Rehabilitation Act ("RA") and the Americans with Disabilities Act ("ADA"). *Giebeler v. M & B Assocs.*, 343 F.3d 1143, 1149 (9th Cir. 2003). The Association does not dispute that the residents of the Kippens' home qualify as handicapped under the FHAA or that the FHAA applies to the Kippens' group home and the CR&R's at issue.

¶7 We must resolve what the requested accommodation actually is before analyzing whether it is mandated by the FHAA. *Cf. id.* at 1148 ("conclusion that a type of alteration to a policy is an 'accommodation' . . . is only the first step"). The Kippens characterize the proposed accommodation as providing their residents access to the RV, which the trial court found to be "very important" to the physical and mental well-being of the residents. But the Association contends the requested accommodation is to allow the Kippens to store an RV on their property without a garage or other satisfactory enclosure.

¶8 The CR&R's allow RV's on all lots within the subdivision. Therefore, any resident, able-bodied or handicapped under the FHAA, may store an RV on his or her lot. The CR&R's only require that it be enclosed within a garage. Generally, an accommodation is a deviation from the norm. *Cf. US Airways, Inc. v. Barnett*, 535 U.S. 391, 397, 122 S. Ct. 1516, 1521, 152 L. Ed. 2d 589, 600 (2002) ("By definition any special 'accommodation' requires the

5

employer to treat an employee with a disability differently, *i.e.,* preferentially."); *see also* 42 U.S.C. § 12111(9) (listing types of accommodations available under the ADA). Thus, because any subdivision resident may store an RV on his or her lot, the requested "accommodation" is, in fact, the waiver of the garage requirement.

¶9 The Kippens argue the trial court erred at the outset by relying on an incorrect burden of proof as to the reasonableness of their proposed accommodation. But they did not present this argument in the trial court and have therefore waived it. *Trantor v. Fredrikson*, 179 Ariz. 299, 300, 878 P.2d 657, 658 (1994) ("Because a trial court and opposing counsel should be afforded the opportunity to correct any asserted defects before error may be raised on appeal, absent extraordinary circumstances, errors not raised in the trial court cannot be raised on appeal."); *see also Navajo Nation v. MacDonald*, 180 Ariz. 539, 547, 885 P.2d 1104, 1112 (App. 1994). Moreover, the issue of reasonableness was not determinative in the trial court, nor, as discussed below, is it determinative in this appeal.

¶10 The Kippens further argue that their proposed accommodation is reasonable and necessary to the residents' use of the home. The Association responds that parking the RV on the Kippens' property, unenclosed, as the Kippens have proposed, is not a necessary accommodation to ensure the residents an equal opportunity to live in their home. In order to prevail on this claim, the Kippens were required to demonstrate their proposed accommodation was "necessary to afford [the residents] equal opportunity to use and enjoy" the Kippens' home. 42 U.S.C. § 3604(f)(3)(B).

> To prove that an accommodation is necessary, "[p]laintiffs must show that, but for the accommodation, they likely will be denied an equal opportunity to enjoy the housing of their choice." *Smith &*

> *Lee*[, *Inc. v. City of Taylor, Mich.*], 102 F.3d [781,] 795[ (6th Cir. 1996)]. Put another way, "[w]ithout a causal link between defendants' policy and the plaintiff's injury, there can be no obligation on the part of defendants to make a reasonable accommodation." [*U.S. v. California Mobile Home Mgmt. Co.*], 107 F.3d [1374,] 1380[ (9th Cir. 1997)].

*Giebeler*, 343 F.3d at 1155. Although we recognize the burden of proving the reasonableness of a proposed accommodation shifts if the proponent makes a prima facie showing, the burden of showing necessity does not shift. *Id.*;[2] *Oconomowoc Residential Programs v. City of Milwaukee*, 300 F.3d 775, 784 (7th Cir. 2002); *see also Lapid-Laurel*, 284 F.3d at 457-58. As the Association points out, the trial court correctly allocated the burden of proving necessity to the Kippens.

¶11 Moreover, whether a proposed accommodation is "necessary" is generally a question of fact. *See Lapid-Laurel*, 284 F.3d at 459; *see also Howard v. City of Beavercreek*, 276 F.3d 802, 807 (6th Cir. 2002); *Oxford House, Inc. v. City of Albany*, 819 F. Supp. 1168, 1176 (N.D.N.Y. 1993) ("Of course, the question of what living conditions are necessary to a particular handicap . . . is a factual determination."). We will defer to a trial court's factual findings unless they are clearly erroneous or supported by no substantial evidence. *In re U.S. Currency in Amount of $26,980.00*, 199 Ariz. 291, ¶9, 18 P.3d 85, ¶9 (App. 2000); *Hrudka v. Hrudka*, 186 Ariz. 84, 91, 919 P.2d 179, 186 (App. 1995).

¶12 At trial, James Kippen testified that he "informal[ly]" obtained a rough estimate of $30,000 to $40,000 to build a garage to enclose the RV. He also testified that the Kippens

---

[2]Without resolving the issue, the court in *Giebeler v. M & B Associates*, 343 F.3d 1143, 1156 (9th Cir. 2003), noted that *US Airways, Inc. v. Barnett*, 535 U.S. 391, 122 S. Ct. 1516, 152 L. Ed. 2d 589 (2002), and *Vinson v. Thomas*, 288 F.3d 1145 (9th Cir. 2002), articulated "slightly differen[t]" burden-shifting standards on the issue of reasonableness.

receive $1,000 to $2,500 a month from each of their nine residents. He then stated that building such a garage would be financially possible, but that it would be "a great burden." But he did not testify about the home's expenses or profits and losses. Kippen further expressed concern about the aesthetic value of the potential RV garage, calling it an "eyesore" and stating that it would not be "conducive to a resale" of the Kippens' home. On appeal, the Kippens claim this testimony established that the cost of building a garage is "prohibitive" and would "simply put[] them out of the business of running an elder care facility." Therefore, they contend, parking the RV without a garage or enclosure is necessary for them to provide a residential, mainstream home to their residents.

¶13            The Kippens presented evidence that building a garage could be inconvenient and speculated that the resulting structure could be unattractive. But they have not shown that the cost of a garage would literally put them out of business or otherwise render their operation financially non-viable. In fact, Kippen testified that he could financially afford to add the garage. He further volunteered that he had "invested" $180,000 for the RV itself, dwarfing the $30,000 estimate for a garage. His opinion that paying for the garage would be a "great burden," unsupported by any testimony about income and expenses or profit and loss, is inadequate to demonstrate financial necessity. Kippen did not testify as to the value of his home or present any competent testimony as to the feared reduction in value. And the Kippens failed to demonstrate that building a garage for the RV would have any effect on the residents' use and enjoyment of their home. Thus, they have failed to demonstrate that "but for" the accommodation, their residents would be denied the opportunity to enjoy the housing of their choice, namely a single-family home in a residential

8

neighborhood. *Giebeler.* Accordingly, the trial court did not clearly err in finding the Kippens' proposed accommodation was not "necessary" under the FHAA.

¶14 Furthermore, other courts have held that "the proper inquiry is not whether 'a particular profit-making company needs such an accommodation, but, rather do such businesses as a whole need this accommodation.'" *Bryant Woods Inn, Inc. v. Howard County, Md*, 124 F.3d 597, 605 (4th Cir. 1997), *quoting Smith & Lee Assocs., Inc. v. City of Taylor, Mich.*, 13 F.3d 920, 931 (6th Cir. 1993); *see also Lapid-Laurel.* The Kippens presented no evidence about either the availability or economics of other residential care facilities. By not building the garage, the Kippens would certainly gain a financial advantage, but they have not shown that advantage is one necessary to the continued operation of their elder care facility, or to any other such facility. Nor have they shown that, in the absence of their facility, their residents would not be able to find similar housing, even in the same subdivision.

¶15 At oral argument, the Kippens suggested that an inquiry into the financial resources of their business was not relevant to the trial court's determination of necessity. Instead, they claimed the trial court should have considered the ability and resources of the residents themselves. But they did not so direct the trial court's focus or otherwise present evidence about the residents' ability to construct a garage. The Kippens further suggested that *Bryant Woods* and similar cases were limited in application to conflicts over the size of a facility for the disabled. The Kippens did not support this contention with legal authority, referring only to a "parking space" case, presumably *Hubbard v. Samson Management Corp.*, 994 F. Supp. 187 (S.D.N.Y. 1998), which did not involve a facility for the disabled at all. And *Giebeler*, a case involving a landlord's financial responsibility requirements for prospective tenants, cited *Turning Point, Inc.*

9

*v. City of Caldwell*, 74 F.3d 941 (9th Cir. 1996), a maximum-facility-size case, for a general proposition under the FHAA. 343 F.3d at 1151-52. Thus, maximum-size cases have been recognized as having general application.

¶16 The Kippens additionally argue, however, that the trial court erred by characterizing their proposed accommodation as a forbidden "preference" that would give them an improper advantage over their neighbors. They correctly note that the United States Supreme Court has recognized that any "reasonable accommodation" is, by definition, a kind of preference. *US Airways*, 535 U.S. at 397, 122 S. Ct. at 1521, 152 L. Ed. 2d at 600. Thus, an accommodation that extends a preference to the disabled is not necessarily improper under the FHAA. As discussed above, however, the trial court correctly found that the Kippens' proposed accommodation was not "necessary" to ensure that the Kippens' residents could enjoy an equal opportunity to live in a residential, single-family home. As such, the trial court's determination that the proposed accommodation would effectively extend a preference or advantage to the Kippens did not affect the outcome of the case. Any error was, therefore, harmless.

¶17 The Kippens lastly request that we reverse the trial court's award of attorney fees to the Association and instead award attorney fees to them, both for the trial and for this appeal. They provide no basis for this request, however. Moreover, they are not the prevailing parties either below or here on appeal. The Association also requests attorney fees on appeal, pursuant to the CR&R's themselves and A.R.S. § 12-341.01. In our discretion, we award the Association its reasonable attorney fees, upon its compliance with Rule 21, Ariz. R. Civ. App. P., 17B A.R.S.

10

## CONCLUSION

**¶18** Having failed to demonstrate the necessity of their proposed accommodation, the Kippens are not entitled, under the FHAA, to a waiver of the relevant CR&R's. Accordingly, the trial court did not clearly err in ruling in favor of the Association and enjoining the Kippens from continuing to park the RV, unenclosed, on their lot. We therefore affirm.

_____
JOSEPH W. HOWARD, Judge

CONCURRING:

_____
J. WILLIAM BRAMMER, JR., Presiding Judge

_____
M. JAN FLÓREZ, Judge

11