340 P.3d 433

**Martin BECK and Sherry Beck, husband and wife, Plaintiffs/Appellants,**

v.

**HY–TECH PERFORMANCE, INC., an Arizona corporation, dba Loper's Service Center, Defendant/Appellee.**

No. 1 CA–CV 13–0723.

Court of Appeals of Arizona, Division 1.

Jan. 8, 2015.

---

Curtis Ensign, PLLC, By Curtis D. Ensign, Phoenix, Counsel for Plaintiffs/Appellants.

Broening Oberg Woods & Wilson, PC, By Wesley S. Loy, Kevin R. Myer, Terrence P. Woods, Phoenix, Counsel for Defendant/Appellee.

Presiding Judge PATRICIA K. NORRIS delivered the opinion of the Court, in which Judge LAWRENCE F. WINTHROP and Judge JOHN C. GEMMILL joined.

## OPINION

NORRIS, Judge.

¶ 1 The dispositive issue in this appeal is whether Arizona's garage lien statute, Arizona Revised Statutes ("A.R.S.") section 33–1022(A) (2014), creates a lien in favor of a garage proprietor when the owner of a motor vehicle agrees to the amount of some, but not all, of the charges for repairs.[1] We hold that it does.

## FACTUAL AND PROCEDURAL BACKGROUND [2]

¶ 2 In February 2012, Plaintiff/Appellant Martin Beck dropped off a 1985 Jaguar he and his wife, Sherry, owned at a garage, Defendant/Appellee Hy–Tech Performance, Inc., with instructions to fix an idling problem so it would pass emissions testing. As explained in more detail below, during the next several weeks Hy–Tech performed multiple repairs to try and fix the problem. Beck agreed to most, but not all, of these repairs.

¶ 3 On March 6, 2012, Beck went to Hy–Tech to retrieve the Jaguar. A Hy–Tech employee presented Beck with a bill for $2,418.33. Beck refused to pay, stating he had not authorized the work performed. Because Beck refused to pay for the repair work, Hy–Tech kept the Jaguar. Hy–Tech's proprietor, Michael Kelly, offered to "work with [Beck]" on the bill, but Beck "wanted nothing to do with it."

¶ 4 The Becks sued Hy–Tech for conversion and also sought an order of replevin. The superior court issued a provisional order of replevin the next day, and the Maricopa County Sheriff's Office executed the order and took possession of the Jaguar on behalf of the Becks. Hy–Tech did not answer the complaint until after the Becks had recovered possession of the Jaguar. The parties stipulated to exonerate the Becks' replevin bond before trial, and Hy–Tech never made any claims to the Jaguar beyond its claim for payment of the repair charges.

¶ 5 The Becks then filed an amended certificate of compulsory arbitration stating that, because they had recovered the Jaguar, they were now only seeking money damages, and thus the case was subject to compulsory arbitration. See Ariz. R. Civ. P. 72(b), (e)(4). Before arbitration, Hy–Tech counterclaimed seeking damages for breach of contract. The arbitrator found in favor of Hy–Tech on its counterclaim and against the Becks on their claims against Hy–Tech. The Becks appealed the arbitrator's ruling to the superior court.

¶ 6 After a bench trial, the superior court found in favor of Hy–Tech on the Becks' conversion claim and on its counterclaim for breach of contract and awarded it $1,907.71 in damages plus attorneys' fees and costs. The superior court "further f[ound] that [the Becks had] voluntarily relinquished the replevin claim in their Amended Certificate Regarding Compulsory Arbitration."

## DISCUSSION

¶ 7 On appeal, the Becks argue the superior court should not have ruled in favor of Hy–Tech on its breach of contract claim and against them on their conversion and replevin claims because Hy–Tech did not have a lien on nor the right to retain possession of the Jaguar.[3] The Becks' arguments turn on whether A.R.S. § 33–1022(A) created a lien in favor of Hy–Tech when Beck agreed to the amount of some, but not all, of the charges for Hy–Tech's repairs. Because we agree

---

**1.** Although the Arizona Legislature amended certain statutes cited in this decision after the date of the events giving rise to this dispute, the revisions are immaterial to the resolution of this appeal. Thus, we cite to the current version of these statutes.

**2.** "We view the facts in the light most favorable to sustaining the trial court's judgment." *Harris*

*v. City of Bisbee*, 219 Ariz. 36, 37, ¶ 3, 192 P.3d 162, 163 (App.2008) (quoting *Cimarron Foothills Cmty. Ass'n v. Kippen*, 206 Ariz. 455, 457, ¶ 2, 79 P.3d 1214, 1216 (App.2003)).

**3.** At oral argument before this court, the Becks' counsel stated the damages they had sought under their conversion and replevin claims were identical.

with the superior court that A.R.S. § 33–1022(A) granted Hy–Tech a lien under these circumstances, we affirm.

### I. A.R.S. § 33–1022(A)

¶ 8 By statute, "proprietors of garages" are entitled to a lien on a motor vehicle for the amount of agreed-upon charges "for labor, materials, supplies and storage." A.R.S. § 33–1022(A). In full, A.R.S. § 33–1022(A) provides:

> Proprietors of garages and repair and service stations shall have a lien upon motor vehicles of every kind and aircraft, and the parts and accessories placed thereon, for labor, materials, supplies and storage for the amount of the charges, when the amount of the charges is agreed to by the proprietor and the owner.

On its face, A.R.S. § 33–1022(A) does not indicate that a garage proprietor will lose an otherwise valid lien when the vehicle owner agrees to the amount of some but not all of the garage's charges. *See Indus. Comm'n of Ariz. v. Old Republic Ins. Co.*, 223 Ariz. 75, 77, ¶ 6, 219 P.3d 285, 287 (App.2009) (text of a statute is "the best and most reliable index" of its meaning) (citations omitted). In other words, if the owner of a vehicle agrees to certain charges for work performed by a garage, a lien securing the payment of those charges attaches, and it is not destroyed by a dispute between the parties regarding other charges.

¶ 9 Our construction of the statute is further supported by the common law antecedent of A.R.S. § 33–1022(A). *See* A.R.S. § 1–201 (2002); *see also Pleak v. Entrada Property Owners' Ass'n*, 207 Ariz. 418, 422, ¶ 12, 87 P.3d 831, 835 (2004) ("Absent a clear manifestation of legislative intent to abrogate the common law, we interpret statutes with 'every intendment in favor of consistency with the common law.'" (quoting *In re Thelen's Estate*, 9 Ariz.App. 157, 160–61, 450 P.2d 123, 126–27 (1969))). At common law, a garage proprietor had a lien on a motor vehicle "when some value was imparted to the automobile by 'performing work or furnishing material' for the vehicle." *Capson v. Maricopa Cnty. Super. Ct.*, 139 Ariz. 113, 115, 677 P.2d 276, 278 (1984) (quoting *Candler v. Ash*, 53 Ohio App.2d 134, 372 N.E.2d 617, 619 (1976)). A garage proprietor did not lose a common law possessory lien by charging more than the agreed amount absent bad faith or an intent to defraud. *See, e.g., Orr v. Mallon*, 190 Okla. 598, 126 P.2d 83, 85 (1942) ("It is established law as the general rule in this state that where a tender is made as full satisfaction of a debt secured by a lien the tender, if unaccepted, does not discharge the lien if the creditor is in good faith claiming a larger amount than the amount tendered."); *Radley v. Raymond*, 34 Wash.2d 475, 209 P.2d 305, 309 (1949) ("No mistake or error in the statement of a claim of lien will invalidate it unless the court finds that such mistake or error was made with intent to defraud or in bad faith."); *see also Macumber v. Detroit Cadillac Motor Car Co.*, 173 A.D. 724, 725, 159 N.Y.S. 890 (N.Y.App. Div. 2 1916) (defendant did not lose lien for repairing automobile by demanding more for auto-repair bill than jury ultimately awarded). In other words, the common-law lien did not require agreement on every penny of the charges; a garage proprietor held a valid common-law lien even when there was a good-faith dispute as to the amount of some of the charges.[4] The wording of A.R.S. § 33–1022(A) is, thus, consistent with the common law in this respect. *See Pleak*, 207 Ariz. at 422, 87 P.3d at 835.

¶ 10 The wording of A.R.S. § 33–1022(A) does not, however, mean a garage proprietor may recover charges the owner has not agreed to by foreclosing a lien on the vehicle. Section 33–1023 (2014), Arizona's lien foreclosure statute, uses the term "the charges" to refer to the amount a garage proprietor may collect from the public auction of a liened vehicle; the balance of the proceeds from the sale must be returned to the owner. This is the same term that de-

---

**4.** No issue of bad faith was raised in this case, and whether a garage would forfeit a lien under A.R.S. § 33–1022(A) upon proof of bad faith is not before us. Nor are we addressing whether a garage would be entitled to assert a lien under the statute if the owner tendered the amount of the agreed-upon charges, but the garage proprietor demanded a greater amount as a condition for releasing the vehicle.

fines the extent of the lien in A.R.S. § 33–1022(A): "Proprietors of garages ... shall have a lien ... for the amount of *the charges,* when the amount of *the charges* is agreed to by the proprietor and the owner." (Emphasis added). *Cf. Obregon v. Indus. Comm'n of Ariz.,* 217 Ariz. 612, 616, ¶ 21, 177 P.3d 873, 877 (App.2008) ("It is a normal rule of statutory construction that identical words used in different parts of the same Act are intended to have the same meaning." (citations omitted) (internal quotation marks omitted)). Reading the two statutes together, a garage proprietor only has a right to apply the sale proceeds up to the amount of her or his lien on a vehicle, i.e., "the amount of the charges ... agreed to by the proprietor and the owner." A.R.S. § 33–1022(A). Thus, while a garage proprietor does not lose his or her right to a lien when the vehicle owner has agreed to the amount of some, but not all, of the charges, he or she may only retain from the sale proceeds the amount the owner agreed to pay.

¶ 11 In support of their position that A.R.S. § 33–1022(A) creates a lien—and the right to possess a vehicle—in favor of a garage proprietor only when the parties have agreed on the exact amount of the charges, the Becks rely on *Fields v. Steyaert,* 21 Ariz.App. 30, 515 P.2d 57 (1973). *Steyaert* is, however, distinguishable. There, the vehicle owner was unconscious at the time the garage proprietor towed, stored, and putatively liened the vehicle, and "[n]o one contend[ed] that there was ever an agreement between [the garage proprietor] and [the owner] ... as to what the proper amount of charges were to be." *Id.* at 31, 515 P.2d at 58. The issue here is not whether a lien attaches in the absence of any agreement but whether a garage proprietor has a lien when there is agreement as to the amount of some, but not all, of the charges.

■ ¶ 12 Accordingly, we hold A.R.S. § 33–1022(A) creates a lien in favor of a garage proprietor for the amount of the agreed charges, even when the parties failed to agree to other charges.

## II. Breach of Contract

¶ 13 The Becks next argue the superior court should not have allowed Hy–Tech to recover on its breach of contract claim because it refused to surrender possession of the Jaguar. We disagree.

### A. Material Breach

¶ 14 The Becks first argue that because A.R.S. § 33–1022(A) was incorporated into their contract with Hy–Tech, *see Banner Health v. Medical Savings Ins. Co.,* 216 Ariz. 146, 150, ¶ 15, 163 P.3d 1096, 1100 (App.2007) ("[A] valid statute is automatically part of any contract affected by it...."), Hy–Tech had an obligation to return the Jaguar absent an agreement as to the full amount of the charges. The Becks, thus, characterize Hy–Tech's refusal to surrender possession of the Jaguar as a material breach which barred it from recovering under the contract. *See Murphy Farrell Development, LLLP v. Sourant,* 229 Ariz. 124, 133, ¶ 33, 272 P.3d 355, 364 (App.2012) ("[A]n uncured material breach of contract relieves the non-breaching party from the duty to perform and can discharge that party from the contract.").

■ ¶ 15 As discussed, a garage proprietor has a lien under A.R.S. § 33–1022(A) when the vehicle owner agrees to any charges. Here, the superior court found—with reasonable evidence in support—that Beck agreed to the bulk of Hy–Tech's charges and the amount thereof. *See Maher v. Urman,* 211 Ariz. 543, 549, ¶ 15, 124 P.3d 770, 776 (App.2005) ("It is well established law in Arizona that appellate courts will not disturb the exercise of discretion of the trial court if it is supported by any reasonable evidence."). Before beginning any work on the Jaguar, Hy–Tech's proprietor, Michael Kelly, told Beck that Hy–Tech charged $107/hour for labor. Beck did not sign any paperwork, but he left the Jaguar with Hy–Tech with instructions to fix the idling problem so the car would pass emissions testing, and all of the work Hy–Tech subsequently performed was consistent with this instruction. *See Steyaert,* 21 Ariz.App. 30, 31, 515 P.2d 57, 58 ("We believe the legislative intent [of A.R.S. § 33–1022(A) ] to be that the owner or his agent must have placed the automobile

with the garageman and made some express or implied contract relative to the charges to be incurred before the garageman can have a *lien* on the automobile."). Furthermore, trial testimony showed Beck had specifically authorized each repair with the exception of one.

¶ 16 Kelly testified he informed Beck that the fuel pump and fuel filter would need to be replaced, gave Beck a quote for a fuel filter, and told Beck the repair would require a few hours of labor. Kelly testified Beck told him to replace the fuel pump and filter. In the course of Hy–Tech's repair work, Kelly also discovered someone had previously installed a wrong fuel injector on the Jaguar. Kelly testified he told Beck about this problem and gave him an estimate for installing the proper fuel injector. Beck told Kelly that the work "had to be done." Kelly then discovered a torn intake manifold gasket. Kelly admitted he did not speak to Beck about this problem but repaired it anyway. Next, Kelly found a "tuliped," or misshapen, exhaust valve. To repair this problem would cost thousands of dollars, so Kelly quit working and spoke with Beck about the problem the next time Beck came into the garage, about a week before he demanded the Jaguar's return. During this conversation Beck asked how much he owed so far, and Kelly gave him an estimate of $1,800–2,200. Beck did not question Kelly's estimate. The actual charges accrued at this point were $2,317.67 before taxes.

¶ 17 Because, as summarized above, the evidence supports the superior court's finding that Beck agreed to the amount of most of the charges, Hy–Tech did not breach the contract by refusing to return the Jaguar to Beck; it lawfully retained possession of the Jaguar under A.R.S. § 33–1022(A). Further, A.R.S. § 33–1022(A) grants a garage proprietor the statutory right to retain possession of a motor vehicle until the agreed-upon charges for "labor, materials, supplies and storage" are paid; it does not obligate the garage proprietor to do anything, let alone return the vehicle on demand without payment. *See* A.R.S. § 33–1022(A).

### B. Breach of Covenant of Good Faith and Fair Dealing

¶ 18 The Becks further argue that by refusing to return the Jaguar on demand, Hy–Tech breached the covenant of good faith and fair dealing. *See Rawlings v. Apodaca*, 151 Ariz. 149, 153, 726 P.2d 565, 569 (1986) ("The essence of [the covenant of good faith and fair dealing] is that neither party will act to impair the right of the other to receive the benefits which flow from their agreement or contractual relationship."). We also disagree with this argument. Although "[a] party may breach the implied covenant [of good faith and fair dealing] even in the absence of a breach of an express provision of the contract by denying the other party the reasonably expected benefits of the agreement," *Nolan v. Starlight Pines Homeowners Ass'n*, 216 Ariz. 482, 489, ¶ 27, 167 P.3d 1277, 1284 (App.2007), the Becks could not have reasonably expected to recover possession of the Jaguar without paying the charges they agreed to pay, especially in light of their position that A.R.S. § 33–1022(A)—a statute granting a possessory lien for payment to a garage proprietor—was incorporated into the contract.

¶ 19 For the foregoing reasons, we hold that Hy–Tech's refusal to return the Jaguar on demand did not bar it from recovering on its breach of contract claim. Accordingly, we affirm the superior court's award of damages to Hy–Tech arising from the Becks' breach of contract.

### III. Conversion

¶ 20 The Becks argue the superior court misapplied A.R.S. § 33–1022(A) in finding Hy–Tech lawfully retained possession of the Jaguar after Beck demanded its return and, accordingly, should have ruled in their favor on their conversion claim. *See Patton v. First Federal Sav. & Loan Ass'n of Phoenix*, 118 Ariz. 473, 479, 578 P.2d 152, 158 (1978) ("Unlawfully withholding property from a person entitled to the possession of the property is a kind of conversion."). Because Hy–Tech had a valid lien on and the right to possess the Jaguar until the Becks paid the agreed charges, Hy–Tech did not convert the Jaguar by retaining it after Beck

demanded its return. We therefore affirm the superior court's judgment against the Becks on their conversion claim.

## IV. Replevin

¶ 21 The Becks next contend the superior court "was bound to enter judgment for Beck on the count of replevin unless Beck had somehow waived the claim." They argue that because they did not, in fact, waive their replevin claim, they were entitled to damages relating to that claim. Although we agree the Becks did not waive their replevin claim, they were not entitled to replevin damages.

¶ 22 The superior court considered the replevin claim resolved because, before trial, the Becks had recovered the Jaguar pursuant to a provisional writ of replevin which Hy–Tech did not oppose, and, in their amended certificate of arbitration, the Becks stated that they were no longer seeking an order of replevin. A provisional order of replevin, however, does not determine ownership of the disputed property; it simply grants the plaintiff "the right of possession of the disputed property only until the matter is resolved by trial of the disputed issues." *Schoolhouse Educ. Aids, Inc. v. Haag,* 145 Ariz. 87, 89, 699 P.2d 1318, 1320 (App.1985). In addition to recovery of the disputed property or its value, a successful plaintiff in a replevin action is entitled to "damages for its wrongful detention." *United Producers & Consumers Coop., Inc. v. O'Malley,* 103 Ariz. 26, 27, 436 P.2d 575, 576 (1968); *accord* A.R.S. § 12–1307 (2003). Thus, the Becks are correct that their recovery of the Jaguar pursuant to the provisional writ of replevin did not fully resolve their replevin claim. *Cf. Schoolhouse Educational Aids, Inc.,* 145 Ariz. at 89–90, 699 P.2d at 1320–21 (plaintiff who obtained disputed property pursuant to provisional writ of replevin not permitted to "deprive defendant of his right to establish title and right to possession and obtain a judgment for return of the property or its value and damages for the taking and withholding of the property" by voluntarily dismissing underlying action to determine the parties' rights in the property).

¶ 23 Regardless, as discussed, the superior court properly found Hy–Tech was entitled to retain possession of the Jaguar after Beck demanded its return. Thus, the Becks were not entitled to any replevin damages. *See United Producers & Consumers Coop., Inc.,* 103 Ariz. at 27, 436 P.2d at 576 ("We have uniformly held that the measure of damages in an action in replevin is the value of the article at the time of trial plus damages for its *wrongful* detention." (emphasis added)). Accordingly, we affirm the superior court's judgment against the Becks on their claim for replevin damages. *See Lake Havasu Resort, Inc. v. Commercial Loan Ins. Corp.,* 139 Ariz. 369, 373, 678 P.2d 950, 954 (App.1983) ("On appeal, we will sustain the trial court's ruling on any theory supported by the evidence, even though the trial court's reasoning may differ from our own.").

## V. Attorneys' Fees

¶ 24 The Becks' only argument challenging the superior court's award of attorneys' fees to Hy–Tech is that it should not have prevailed at trial. For the foregoing reasons, we disagree, and accordingly affirm the superior court's award of fees to Hy–Tech.

## CONCLUSION

¶ 25 We affirm the superior court's judgment in favor of Hy–Tech.[5] Pursuant to A.R.S. § 12–341.01 (Supp.2014), we award Hy–Tech an amount of reasonable attorneys' fees, and its statutory taxable costs on appeal pursuant to A.R.S. § 12–341 (2003), contingent upon its compliance with Rule 21, Arizona Rules of Civil Appellate Procedure.

---

5. At oral argument, Hy–Tech withdrew its request that we increase the judgment to the full amount it charged the Becks.