NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

JOHN MOTTA, *Plaintiff/Appellant,*

*v.*

FLAGSTAR BANK FSB, *Defendant/Appellee.*

No. 1 CA-CV 16-0295
FILED 6-6-2017

Appeal from the Superior Court in Maricopa County
No.  CV2012-052407
The Honorable John R. Hannah, Jr., Judge

**AFFIRMED**

COUNSEL

Law Offices of Beth K. Findsen, PLLC, Scottsdale
By Beth K. Findsen
*Counsel for Plaintiff/Appellant*

Dickinson Wright PLLC, Phoenix
By Bradley A. Burns
*Co-Counsel for Defendant/Appellee*

Dickinson Wright PLLC, Las Vegas, NV
By Cynthia L. Alexander
*Co-Counsel for Defendant/Appellee*

---

**MEMORANDUM DECISION**

Judge Kenton D. Jones delivered the decision of the Court, in which Presiding Judge Margaret H. Downie and Judge Donn Kessler joined.

---

**J O N E S**, Judge:

¶1        John Motta appeals the judgment in favor of Flagstar Bank FSB (the Bank) on claims related to the Bank's purported misconduct in conducting a non-judicial foreclosure sale of real property located in Glendale (the Westcott Property).  For the following reasons, we affirm.

**FACTS[1] AND PROCEDURAL HISTORY**

¶2        In June 2008, Motta obtained a loan in the amount of $389,700 from Innovative Mortgage Group Inc. (the Lender), which was evidenced by a promissory note (the Note) and secured by a recorded deed of trust (Deed of Trust) on the Westcott Property.  The Deed of Trust named the Bank as trustee and Mortgage Electronic Registration Systems, Inc. (MERS) "as a nominee for Lender and Lender's successors and assigns"; it also identified MERS as "the beneficiary under the Security Instrument."[2]  The Deed of Trust further stated that, as nominee for the Lender, MERS had "the right to foreclose and sell the [Westcott] Property; and to take any action required of Lender including, but not limited to, releasing and

---

[1]        "We view the facts in the light most favorable to upholding the trial court's judgment."  *Beck v. Hy-Tech Performance, Inc.*, 236 Ariz. 354, 356 n.2, ¶ 1 (App. 2015) (quoting *Harris v. City of Bisbee*, 219 Ariz. 36, 37, ¶ 3 (App. 2008)).

[2]        "MERS is a private corporation that administers a national electronic registry that tracks the transfer of ownership interests and servicing rights in mortgage loans.  Members of the registry assign their interest to MERS, and MERS becomes the mortgagee of record."  *Sitton v. Deutsche Bank Nat'l Tr. Co.*, 233 Ariz. 215, 216 n.1, ¶ 3 (App. 2013) (citing *Stauffer v. U.S. Bank Nat'l Ass'n*, 233 Ariz. 22, 24 n.1, ¶ 2 (App. 2013)).  When members transfer interests between them, MERS privately tracks the assignment within its system but remains the mortgagee of record.  In this manner, the lenders are able to sell their interests in promissory notes and servicing agreements without having to publicly record the transaction.  *Id.*

cancelling this Security Instrument." Under the terms of the Deed of Trust, Motta consented to a non-judicial foreclosure in the event of his default on the Note. Motta also agreed the Note could be "sold one or more times without prior notice" to him. In August 2008, the Lender's interest in the Note and Deed of Trust was transferred to the Bank.

¶3 Motta defaulted on the loan in May 2010. The Bank notified Motta of the default in writing and attempted to contact him multiple times to discuss alternatives to foreclosure. Motta did not contact the Bank until August 2010, at which time he advised he was unable to make payments on the Note. The Bank immediately sent Motta a loss-mitigation package.

¶4 Around this same time, MERS, acting as the Bank's agent, recorded a Notice of Substitution of Trustee naming William Clarke as Trustee. Five days later, Clarke recorded a Notice of Trustee's Sale, setting the sale of the Westcott Property for November 24, 2010. The trustee's sale was postponed several times, at Motta's request, while the parties discussed loss-mitigation options.

¶5 In February 2011, Motta was advised he was approved to enter a trial period plan (TPP) under the Home Affordable Modification Program if he accepted the offer by executing the agreement and making the first monthly payment by April 1, 2011. A few days later, the trustee's sale of the Westcott Property was rescheduled for that same date.

¶6 Motta spoke with representatives from the Bank several times regarding the TPP. But on March 24, 2011, just one week before the scheduled trustee's sale, Motta advised the Bank "he [wa]s not sure what he [wa]s doing yet" and expressed concern as to "why he would want to do a mod[ification] to save" the Westcott Property given its deflated value. A representative from the Bank gave Motta instructions on how to wire the funds, a fax number, and a direct phone number and advised Motta to contact the Bank if he decided to move forward with the modification so the Bank could cancel the pending sale. Motta did not contact the Bank before the sale, did not execute the TPP agreement, and did not make any payment, and the Westcott Property was sold at the April 1, 2011 trustee's sale.

¶7 Although Motta was not prepared to commit to the proposed modification the week before the sale, he was "still interested in finding out if [the Bank] would go further" in reducing his debt. Motta testified he intended to make the first TPP payment because he had no other options to save the Westcott Property, but, for "cash flow" reasons, it was not prudent

to do so "days sooner" than the deadline. Thus, Motta claimed he began calling the Bank before 5:00 a.m. on the morning of the sale to arrange payment. But, Motta was unable to make contact until after the sale had been completed. Motta did not present any evidence that he actually executed the TPP agreement, wired the funds, or mailed a check to the Bank prior to the end of business on April 1, 2011. Nor did he take any steps to postpone the April 1st sale, despite having successfully postponed the sale on at least two prior occasions.

¶8        In April 2012, Motta filed a complaint seeking an order invalidating the April 2011 trustee's sale. He ultimately alleged five claims for declaratory and monetary relief: (1) negligent misrepresentation; (2) violation of the Arizona Consumer Fraud Act (AFCA), *see* Ariz. Rev. Stat. (A.R.S.) §§ 44-1521[3] to -1534; (3) lack of authority to order a trustee's sale; (4) false recording in violation of A.R.S. § 33-420; and (5) wrongful foreclosure. The claims were premised upon Motta's assertions that the Bank falsely promised not to foreclose on the Westcott Property while he pursued a loan modification and effectuated the sale through improper third parties: MERS and Clarke.

¶9        After considering the parties' motions for summary judgment and conducting a two-day bench trial, the trial court entered judgment in favor of the Bank on all claims. Motta filed a timely motion for new trial, which was denied. Motta timely appealed, and we have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1) and -2101(A)(1), (5)(a).

## DISCUSSION

I.    **The Evidence Supports the Trial Court's Finding That Motta Did Not Rely upon the Bank's Representations.**

¶10        To prevail on his claims for negligent misrepresentation and consumer fraud, Motta was required to prove, among other things, that he relied upon the Bank's representation that it would not foreclose on the Westcott Property while he pursued a loan modification. *See W. Techs., Inc. v. Sverdrup & Parcel, Inc.*, 154 Ariz. 1, 3 (App. 1986) (citing *Ariz. Title Ins. & Tr. v. O'Malley Lumber Co.*, 14 Ariz. App. 486, 491 (1971), and Restatement (Second) of Torts § 552 (1977)); *Peery v. Hansen*, 120 Ariz. 266, 269 (App. 1978) ("It is clear that before a private party may exert a claim under the

---

[3]        Absent material changes from the relevant date, we cite a statute's current version.

[AFCA], he must have been damaged by the prohibited practice. A prerequisite to such damages is reliance on the unlawful acts.").

¶11 Motta argues the trial court erred in finding he failed to prove reliance.[4] Whether a plaintiff has relied upon a defendant's representations is a question of fact. *Mayo v. Ephrom*, 84 Ariz. 169, 176 (1958). We will uphold the court's factual finding "unless we find it is without any evidence to support it or is absolutely contrary to the uncontradicted and unconflicting evidence on which it purports to rest." *Cauble v. Osselaer*, 150 Ariz. 256, 258 (App. 1986) (citing *Ariz. Dep't of Pub. Safety v. Dowd*, 117 Ariz. 423, 426 (App. 1977)).

¶12 Relevant to this contention, the trial court found the "keystone" of Motta's case was his testimony that he relied upon the Bank's representation it would not foreclose on the Westcott Property and that he intended to accept the modification offer by making a payment by the final deadline — April 1, 2011 — but was prevented from doing so by the trustee's sale. The court, however, found this testimony "not sufficiently credible to carry the burden of proof." In drawing this conclusion, the court considered: (1) Motta's testimony that his goal in negotiating with the Bank was to obtain a reduction in principal on the Note — a term of modification the Bank had not offered; (2) the fact that Motta owned a second property (the Topeka Property) that was worth less than the loan securing it and did not present any feasible plan to meet that obligation; and (3) Motta's statements to the Bank one week prior to the sale that he was "not sure what he [wa]s going to do yet" and "his concern [wa]s his property value and why he would want to do a mod[ification] to save it." "Against this factual backdrop," the court found it more likely "Motta was holding out in the hope that someone would entertain his request for a principal reduction; and it is more likely than not that he would have continued to hold out until Flagstar ended the matter by proceeding with the trustee's sale."[5]

---

[4] Although Motta appears to later argue the Bank is liable on a private cause of action for consumer fraud notwithstanding any failure to prove reliance because, he asserts, the evidence suggests the Bank acted with an intent to deceive, that is not the law. *See Peery*, 120 Ariz. at 269.

[5] Motta argues the trial court improperly "conflated (1) Motta's reliance upon the [Bank]'s commitment not to foreclose with (2) Motta's reliance on Flagstar's offer of a future modification if the [April 1, 2011 payment] were successfully completed." But Motta concedes that his

**¶13** Motta argues the trial court's observations regarding his probable inability to refinance the Topeka Property or make a reduced monthly payment on the Westcott Property were "naked speculation" and irrelevant to his reliance upon the Bank's promise not to foreclose. We disagree. The court received evidence regarding Motta's financial situation and was free to draw inferences regarding his ability, or lack thereof, to meet his obligations notwithstanding modification of the Note secured by the Westcott Property. Moreover, evidence regarding the status of the loan on the Topeka Property corroborates the implication from Motta's statements to the Bank that a loan modification would be futile given the deflated value of both properties.

**¶14** Motta also argues the trial court improperly "discounted Motta's sworn testimony" and gave too much weight to the Bank's "meager" evidence in reaching these conclusions. But we do not reweigh evidence on appeal, *Sholes v. Fernando*, 228 Ariz. 455, 460, ¶ 15 (App. 2011) (citation omitted), and "[w]here the evidence is in conflict, we will not substitute our opinion thereof for that of the trial court," *Anderson v. Artesia Inv. Co.*, 66 Ariz. 335, 338 (1948) (citations omitted); *see also Todaro v. Gardner*, 72 Ariz. 87, 91 (1951) ("[T]he trial court, sitting without a jury, is judge of the credibility of witnesses, the weight of the evidence, and reasonable inferences to be drawn therefrom.") (citing *Rogers v. Greer*, 70 Ariz. 264, 270 (1950)).

**¶15** Although Motta presented evidence in support of his position, the trial court ultimately found Motta's testimony not credible and rejected the assertion that, had Motta known the Bank was moving forward with the April 2011 sale, he would have accepted the loan modification agreement, preserved defenses to the foreclosure sale pursuant to A.R.S. § 33-811(C), or exercised his right to cure pursuant to A.R.S. § 33-813(A). This finding is consistent with Motta's statements to the Bank, one week prior to the sale, that he was not convinced modification would save the Westcott Property. It is also consistent with the absence of evidence that Motta acted to accept the TPP or make the first payment on April 1st.

---

claims for negligent misrepresentation and consumer fraud require proof that Motta relied upon the "misrepresentation . . . that Flagstar would not foreclose with the terms of the [modification] open." This is the precise contention the court addressed within its order when it concluded Motta had failed to present credible evidence he had ever intended to make the April 1, 2011 payment.

**¶16** Viewing the evidence as a whole, we cannot say the trial court's findings regarding reliance are "absolutely contrary to the uncontradicted and unconflicting evidence," and we find no abuse of discretion. Because Motta did not prove reliance, he cannot prevail on his claims for negligent misrepresentation and consumer fraud, and judgment in the Bank's favor on these claims is proper.

## II. The Evidence Supports the Trial Court's Finding That the Bank's Conduct Was Not the Proximate Cause of Motta's Damages.

**¶17** Assuming Motta stated a claim for wrongful foreclosure — a tort never-before recognized in Arizona — he was required to prove the Bank's conduct caused his damages. *See, e.g., In re MERS*, 754 F.3d 772, 784 (9th Cir. 2014) (holding, under California law, a plaintiff states a claim for wrongful foreclosure where he alleges "the trustee or mortgagee *caused* an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust") (emphasis added) (quoting *Lona v. Citibank, N.A.*, 134 Cal. Rptr. 3d 622, 633 (Ct. App. 2011)); *Heritage Creek Dev. Corp. v. Colonial Bank*, 601 S.E.2d 842, 844 (Ga. Ct. App. 2004) (requiring a plaintiff asserting a claim of wrongful foreclosure under Georgia law "to establish a legal duty owed to it by the foreclosing party, a breach of that duty, a causal connection between the breach of that duty and the injury it sustained, and damages") (citing *Calhoun First Nat'l Bank v. Dickens*, 443 S.E.2d 837, 839 (1994)). Motta argues the trial court erred in finding he failed to prove causation. We will not set aside the court's factual finding in this regard unless it is clearly erroneous. *See supra* ¶ 11; *see also Ramsey v. Ariz. Registrar of Contractors*, 241 Ariz. 102, 109, ¶ 22 (App. 2016) (citing Ariz. R. Civ. P. 52(a), and *Clark v. Anjackco Inc.*, 235 Ariz. 452, 456, ¶ 14 (App. 2014)); *Jacobson v. Laurel Canyon Mining Co.*, 27 Ariz. 546, 561 (1925) ("[T]he question of proximate cause is one of fact.").

**¶18** In his opening brief, Motta focuses upon the Bank's purported misconduct, arguing prejudice may be presumed from its failure to strictly comply with the governing documents and Arizona statutes. In doing so, he misses the mark. The Bank had a right to foreclose while Motta was in default. *See, e.g., In re MERS*, 754 F.2d at 784 ("[E]ven were we to assume that the tort of wrongful foreclosure exists in Arizona, one of its elements would very likely be lack of default.") (citing A.R.S. § 33-807(A), which provides the mortgagee with the power of sale after default); *Collins v. Union Fed. Sav. & Loan Ass'n*, 662 P.2d 610, 623 (Nev. 1983) (clarifying the basic premise of a wrongful foreclosure claim is that the foreclosure occurred at a time when "no breach of condition or failure of performance existed . . . which would have authorized the foreclosure or exercise of the

power of sale" and citing cases from California, Missouri, and Texas); *Heritage Creek*, 601 S.E.2d at 845 (affirming summary judgment in favor of the lender where "the undisputed evidence show[ed] that [the borrower]'s alleged injury was solely attributable to its own acts and omissions both before and after the foreclosure" including its default on the loan payment, failure to cure, failure to bid on the property, and failure to take advantage of the opportunity to repurchase the property pursuant to a separate agreement).[6]

¶19        In its order, the trial court found that "[i]n deciding not to pay on the loan, Mr. Motta was not relying on any promises made by Flagstar." Thus, Motta's default was of his own volition and not "at the direction of Flagstar." Therefore, the court concluded, the Bank was not responsible for the natural consequences flowing from the default, including the trustee's sale. Contrary to Motta's assertions otherwise, this finding is supported by the record. Although Motta testified he only stopped making payments in 2010 after the Bank advised it could not discuss modification if he was current on the Note, the documentary evidence indicates Motta had no contact with the Bank prior to discontinuing all payments in May 2010.

¶20        While Motta was in default, the Bank was legally authorized to proceed with the sale, and it did not act wrongfully in doing so. The damages Motta alleges followed from the foreclosure are not, and cannot be, attributable to any conduct on the part of the Bank. Accordingly, we find no error in the trial court's finding that Motta failed to prove causation

---

[6]        Motta defines the tort more generally as occurring "where there has been an illegal, fraudulent, or willfully oppressive sale of property under a power of sale contained in a mortgage or deed of trust." *See Miles v. Deutsche Bank Nat'l Tr. Co.*, 186 Cal. Rptr. 3d 625, 635 (Ct. App. 2015) (quoting *Munger v. Moore*, 89 Cal. Rptr. 323, 326 (Ct. App. 1970)). A thorough reading of *Miles*, however, reveals that this quoted language is but a summary of the theory behind a wrongful foreclosure action. Indeed, the *Miles* court went on to list specific elements of a wrongful foreclosure claim, which included proof that, "in cases where the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the amount of the secured indebtedness or was excused from tendering." *Id.* at 636 (quoting *Lona*, 134 Cal. Rptr. 3d at 633). The California Court of Appeal then adopted the wrongful foreclosure standard enunciated in *Collins*, requiring the foreclosure occur when the mortgagor is not in default, as "a sound addition" to its explanation. *Id.* (quoting *Collins*, 662 P.2d at 623).

for purposes of a wrongful foreclosure and affirm judgment in favor of the Bank on that claim.

### III. The Evidence Supports the Trial Court's Finding That the Bank Did Not Know or Have Reason to Know the Recorded Documents Were Forged, Groundless, Contained a Material Misstatement or False Claim, or were Otherwise Invalid.

**¶21**        Pursuant to A.R.S. § 33-420(A):

> A person purporting to claim an interest in, or a lien or encumbrance against, real property, who causes a document asserting such claim to be recorded in the office of the county recorder, *knowing or having reason to know* that the document is forged, groundless, contains a material misstatement or false claim or is otherwise invalid is liable to the owner or beneficial title holder of the real property . . . .

(Emphasis added).  Motta argues the trial court erred in finding the Bank did not know or have reason to know of any defects contained within its recorded documents.  The existence and extent of a party's knowledge presents a question of fact, *see, e.g.*, *Cheek v. United States*, 498 U.S. 192, 203 (1991) ("Knowledge and belief are characteristically questions for the factfinder."), and we will uphold the trial court's resolution of that factual issue absent clear error, *see supra* ¶ 11.

**¶22**        Motta's claim for false recording is premised upon his belief that the Bank incorrectly identified MERS as the beneficiary of the Deed of Trust in certain recorded documents.[7] Motta relies upon rules and guidelines from various organizations and a consent order between the Bank and the Consumer Financial Protection Bureau to impute knowledge of this purportedly improper practice to the Bank.  However, the recorded documents at issue were recorded in 2010, well before the effective dates of the materials Motta relies upon as providing the Bank with knowledge.

---

[7]        Although much is made of MERS's participation in the trustee's sale, Motta consented to MERS's involvement when he executed the Deed of Trust.  Moreover, Motta fails to identify any action taken by MERS that prevented him from meeting his obligations under the Note or following through on the loan modification; nor does Motta challenge the trial court's order granting summary judgment in the Bank's favor on his claim that the Bank was not authorized to act through MERS and Clarke in effectuating the trustee's sale.

Therefore, they are not probative of the Bank's knowledge at the time of the earlier recording. The cases cited in Motta's opening brief suffer from the same chronological error. *See, e.g.*, *In re MERS*, 754 F.3d 772; *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034 (9th Cir. 2011). Moreover, the existence of these internal business guidelines suggests the standard practice prior to their issuance was consistent with the practice followed by the Bank here, whereby MERS acted as the nominee of the lender and beneficiary of the deed of trust. Finally, the consent order primarily addresses the Bank's delay and misconduct in relaying information to consumers regarding loan modifications. But Motta does not complain of delay or misconduct regarding the loan modification, and, regardless, the trial court already found Motta was disinterested in the proposed modification. *See supra* Part I.

**¶23**        Considering the untimely and immaterial evidence upon which Motta relies, we cannot say the trial court abused its discretion in concluding Motta failed to prove the Bank knew or should have known that MERS was an improper beneficiary.[8] We find no error.

## CONCLUSION

**¶24**        The judgment in favor of the Bank is affirmed.



AMY M. WOOD • Clerk of the Court
FILED:  AA

---

[8]        Because the Bank cannot be liable under A.R.S. § 33-420 where it did not know or have reason to know of defects within the recorded documents, we need not and do not address Motta's arguments challenging the trial court's findings regarding the nature of the representations contained therein or that statutory damages were appropriate.